**Willie C. ENGLISH, Plaintiff,**

v.

**MCC FINANCIAL SERVICES, INC., Defendant.**

**Virgil L. BURTON, Plaintiff,**

v.

**MCC FINANCIAL SERVICES, INC., Defendant.**

**Civ. A. Nos. 74–166–Mac, 74–176–Mac.**

United States District Court, M. D. Georgia, Macon Division.

April 25, 1975.

Robert E. Steele, Jr., Macon, Ga., for plaintiff.

Albert P. Reichert, Jr., Anderson, Walker & Reichert, Macon, Ga., for defendant.

OWENS, District Judge:

The above captioned cases have been brought pursuant to the Consumer Credit Protection Act, 15 U.S.C.A. § 1601 et seq., and Regulation Z, § 226.1 et seq., seeking damages for the alleged failure of the defendant MCC Financial Services, Inc. (hereinafter MCC), to comply with the disclosure requirements of the Act. Plaintiffs have brought these actions, each alleging two counts:

(1) the insurance authorization is not complete within itself because the costs of authorized insurance are listed on the opposite side of the page along with other costs of the loan; and

(2) the "cash price" on the credit sales includes taxes, license fees, registration and certificate of title fees, but said items are neither itemized nor included in the "finance charge", and thus violate Regulation Z, § 226 4(b)(4).

Plaintiffs seek damages as provided for in 15 U.S.C.A. § 1640, including reasonable attorneys' fees.

It having been agreed by the parties that these cases can be disposed of on

the basis of the pleadings and other documents of record in the files, the same are now before the court for disposition. The following constitutes the court's findings of fact and conclusions of law pursuant to Rule 52, Federal Rules of Civil Procedure.

## I. JURISDICTION.

This court has jurisdiction of these cases which are brought under the Consumer Credit Protection Act, 15 U.S.C. A. § 1601 et seq., by virtue of 15 U.S.C. A. § 1640(e).

## II. CONSOLIDATION.

Inasmuch as the above-captioned cases involve common questions of law and fact and because no prejudice would result thereby, the above captioned cases are hereby consolidated pursuant to Rule 42(a), Federal Rules of Civil Procedure.

## III. THE FACTS.

On January 24, 1974, G. H. Yopp, owner of Yopp & Son New & Used Cars (hereinafter Yopp), entered into a conditional sales agreement for the sale of a used 1971 Ford Country Sedan Wagon to the plaintiff Willie C. English. This transaction is evidenced by Exhibit "A" attached hereto which is a form supplied to Yopp by MCC whereunder MCC financed Yopp's conditional sales contracts. The "cash price" of the sale was $1,839.85, which included $44.85 Georgia sales tax. The "price of car" is listed as $1,795.00, and together with the sales tax equals the "cash price" of $1,839.85 as evidenced by Exhibit "B", also attached hereto. Plaintiff was given a $300.00 allowance for the trade-in value of a 1965 Ford Fairlane Wagon. A note of $539.85, payable to Yopp was given by plaintiff English, and the defendant MCC financed the balance of $1,000.00.

On November 23, 1973, Yopp entered into a conditional sales agreement for the sale of a used 1968 Buick Wildcat Coupe to the plaintiff Virgil L. Burton. This transaction is evidenced by Exhibit "C" attached hereto, which is a form supplied to Yopp by MCC, whereunder MCC financed Yopp's conditional sales contracts. The "cash price" of the sale was $1,436.85, which includes $41.85 Georgia sales tax. The "price of car" is listed as $1,395.00, and together with the sales tax equals the "cash price" of $1,436.85 as evidenced by Exhibit "D" attached hereto. Plaintiff Burton paid a down payment of $336.85 to Yopp and financed the balance owing of $1,100.00 through MCC.

According to Yopp, the "cash price" of each of the above-described credit sales did not include any taxes, license fees, registration or certificate of title fees, other than the above-mentioned Georgia sales taxes.

## IV. CONCLUSIONS OF LAW.

(A) *When Insurance Premiums are Includable in Finance Charge—*

The above described transactions involved closed end consumer credit sales within the meaning of 15 U.S.C.A. § 1638; Regulation Z, § 226.8. Specifically, they are credit sales within the purview of Regulation Z, § 226.8(c). Under the above described situation, this court finds MCC to be a "creditor" within the definition of the Act, 15 U. S.C.A. § 1602(f), and pursuant to 15 U. S.C.A. § 1631, MCC is required to disclose certain information required under Part B of the Act. In these cases, an essential item requiring disclosure is the amount of the "finance charge". Title 15 U.S.C.A. § 1638(a)(6); Regulation Z, § 226.8(c)(8)(i). The specific language in the Act, 15 U.S.C.A. § 1605(b) which defines "finance charge", requires *inter alia* that charges for credit life insurance be included in the "finance charge" unless it is clearly disclosed in writing to the consumer that coverage of the debtor by insurance is not a factor in the approval of the extension of credit and the debtor gives affirmative written indication that he or she desires insurance after its cost has been

disclosed.[1] The corresponding section in Regulation Z, § 226.4(a)(5), 12 C.F.R. § 226.4(a)(5), is similarly phrased.[2]

█ In the cases *sub judice,* the costs of credit life insurance premiums were properly excluded from the "finance charge" in direct compliance with 15 U.S.C.A. § 1605(b), and section 226.-4(a)(5) of Regulation Z. Nowhere in the Act is there a requirement that the creditor disclose the insurance costs in any one particular place on the financing statement. Accordingly, this court concludes that the plaintiff's contention that the insurance costs must be within the precise area set out for the insurance authorization is without merit. The purpose of the Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." Title 15 U.S.C.A. § 1601. After a consideration of⁺

Exhibits "A" and "C", this court can only conclude that the costs of credit life insurance were plainly disclosed on the face of financing statements and hence, a meaningful disclosure was made. The insurance authorization block which occupies the front left center of the financing statements specifically refers and points to item 8(b) of the "Itemized Sale Statement", which is to the immediate right of the insurance authorization block. Item 8(b) clearly reflects charges of $15.48 and $17.45 for credit life insurance premiums charged to each of the respective plaintiffs.

(B) *Exemption of Other Items from Finance Charge*

The Act further exempts certain items from computation of the "finance charge", provided these items are itemized and disclosed.[3] The corresponding section in Regulation Z, § 226.4(b) is similarly phrased.[4]

---

1. Title 15 U.S.C.A. § 1605(b) provides:
   "Life, accident, or health insurance premiums included in finance charge
   "(b) Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless
   "(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and
   "(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof."

2. Regulation Z, § 226.4(a)(5) provides:
   "(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless
   "(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and
   "(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance."

3. Title 15 U.S.C.A. § 1605(d) provides:
   "Items exempted from computation of finance charge in all credit transactions
   "(d) If any of the following items is itemized and disclosed in accordance with the regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction:
   "(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.
   "(2) The premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction, if the premium does not exceed the fees and charges described in paragraph (1) which would otherwise be payable.
   "(3) *Taxes.*
   "(4) *Any other type of charge which is not for credit and the exclusion of which from the finance charge is approved by the Board by regulation.*" (Emphasis added.)

4. Regulation Z, § 226.4(b) provides:
   "(b) Itemized charges excludable. If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:
   "(1) Fees and charges prescribed by law which actually are or will be paid to public

Federal Reserve Board staff opinions, which explain the provisions of the Act, Regulation Z, and the Federal Reserve Board Interpretations of Regulation Z, are entitled to great weight for they constitute part of the body of " 'informed experience and judgment of the agency to whom Congress delegated appropriate authority.' " *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974). However, they are not binding upon the court.

In a published opinion dealing with auto dealers' sale charges, the Board stated:

> "Since charges (2) [state sales tax] . . . are not imposed as a condition of or incident to the extension of credit, and need not be itemized to be excludable from the finance charge under § 226.4(b) . . . they may be included in the cash price if they may be included as 'other charges' (if financed)." Excerpts from Federal Reserve Board letter of August 9, 1972, No. 623, by Griffith L. Garwood, Chief, Truth in Lending Section, 4 CCH Consumer Credit Guide ¶ 30,872.

In the cases *sub judice,* while the sales agreements parenthetically state that the "cash price" includes "Taxes, License fees, Registration, & Certificate of title", the evidence reveals that the only item included in the "cash price" is the 3 percent Georgia sales tax, which item need not be included in the "finance charge."

Further, an examination of Exhibits "B" and "D"* plainly show that the Georgia sales tax charges were shown to the plaintiff to be part of the "cash price" of the automobiles purchased. Accordingly, this court can only conclude that defendant has complied with the disclosure requirements of the Act and the Regulations.

## V. CONCLUSION.

The court finds that the defendant MCC complied with the disclosure requirements of the Consumer Credit Protection Act and Regulation Z and accordingly, defendant is not legally liable or indebted to the plaintiffs under its provisions, and that the cost of these actions be assessed against the plaintiffs.

So ordered, this the 24th day of April, 1975.

---

officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

"(2) The premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction, if the premium does not exceed the fees and charges described in subparagraph (1) of this paragraph which would otherwise be payable.

"(3) Taxes not included in the cash price.

"(4) License, certificate of title, and registration fees imposed by law."

* Editorial Note: The exhibits have been deleted from the opinion as published.