David GANTT and Phyllis Gantt, Appellants,

v.

COMMONWEALTH LOAN COMPANY, a Delaware Corporation, d/b/a Beneficial Finance Company, Appellee.

No. 76–1552.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1977.

Decided Feb. 17, 1978.

8. *E. g., United States v. Staszcuk*, 502 F.2d 875, 882–3 (7th Cir.) *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975).

George S. Newman, Legal Aid Society of St. Louis, Clayton, Mo., on brief for appellants.

Michael H. Wetmore, Thompson & Mitchell, St. Louis, Mo., for appellee; David Wells, St. Louis, Mo., on brief.

Before HEANEY, WEBSTER and HENLEY, Circuit Judges.

WEBSTER, Circuit Judge.

David and Phyllis Gantt appeal from a judgment for defendant Commonwealth Loan Co. in their Truth-in-Lending Act action.

On December 5, 1973, the Gantts borrowed $2,481.20 from Commonwealth in a consumer loan transaction in St. Louis County, Missouri. This loan was refinanced three times: on May 24, 1974, November 20, 1974, and February 28, 1975. In connection with each of the four transactions, the parties executed disclosure statements. Each disclosure statement provided that, in the event of prepayment, the unearned portion of the finance charge would be refunded to the borrowers as computed by the "Direct Ratio Refund Method, generally known as the Rule of 78ths." On each refinancing, the Gantts were credited with unearned finance charges computed using the Rule of 78's.

Each disclosure statement also included David Gantt's indication that he desired, for himself, credit disability and credit life insurance. Phyllis Gantt did not indicate a similar desire for such insurance to cover either David or herself. As clearly noted on the disclosure statements, the loans were not contingent upon the Gantts' obtaining this insurance. In each instance, the insurance premium was included in the amount financed rather than as a finance charge.

On May 23, 1975, the Gantts filed their complaint seeking money damages under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, promulgated pursuant thereto. After trial to the Court on stipulated facts and exhibits, the District Court[1] entered findings of fact and conclusions of law, and held that no violation of Regulation Z had occurred. The Gantts appeal from that judgment.

In their appeal, appellants contend that: (1) appellee's failure to obtain Phyllis Gantt's signature in the insurance autho-

---

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

rization on the consumer loan transactions violated 12 C.F.R. § 226.4(a)(5); and (2) appellee's failure, in this refinancing transaction, to include in the new finance charge the difference between unearned finance charge rebates as calculated under the actuarial method and the Rule of 78's method violated 12 C.F.R. § 226.8(j). We reject both of appellants' contentions and affirm the judgment of the District Court.

## I.

The Truth-in-Lending Act and Regulation Z require that certain significant aspects of consumer credit transactions be disclosed to the consumer. A clear distinction is made between the amount actually financed (amount financed) and the amount charged for financing the transaction (finance charge). Neither the statute nor the regulation purport to regulate the amount of the finance charge or compel that such charge be *computed* in any specific way, assuming it meets the requirements of the applicable state law. Rather, the components of a finance charge are set forth, and disclosure of the finance charge must include the aggregate of its components.

15 U.S.C. § 1605(b) provides that premiums for life insurance in a consumer credit transaction must be included in the finance charge unless: (1) the lender discloses that obtaining the insurance is not a factor in approval of the extension of credit, and (2) "the person to whom the credit is extended" gives specific written indication of his desire to obtain the insurance.

In this case, it is conceded that the approval of credit extension was not in any way contingent upon obtaining credit life insurance. David Gantt, the person insured, gave a specific written indication of his desire to purchase insurance in connection with the original loan and each refinancing. Nonetheless, appellants argue that the insurance premium should have been included in the finance charge, rather than the amount financed, because Phyllis Gantt did not consent to obtaining credit life insurance on her husband's life.

At first reading, the language of § 1605 requiring written acknowledgment by "the person to whom the credit is extended" offers some support for appellants' position. Mrs. Gantt, as a co-obligor, was undoubtedly such a person. The statutory language, however, is cast in the singular and there is no indication either in § 1605 or its congressional history to suggest that Congress contemplated consent by all borrowers in a multi-party transaction to insure the life of a single borrower. *See* Conf.Rep. No. 1397, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2021, 2022–23. Similarly, Regulation Z does not address the problem in the context of a multi-borrower transaction. It requires disclosure only to "the customer." 12 C.F.R. § 226.4(a)(5), (i).

The staff of the Federal Reserve Board, in an opinion letter, has specifically considered the question presented here. *See* Federal Reserve Board Letter No. 624 (Aug. 9, 1972) [Truth-in-Lending Special Releases—Correspondence April, 1969 to April, 1974] Cons.Cred.Guide (CCH) ¶ 30,-873. Considering hypothetical facts identical to those present in this case the Board's staff has concluded that even if only the insured customer requests the insurance, the premiums may be excluded from the finance charge.

Under § 226.4(a)(5) . . . of Regulation Z, premiums for credit life insurance may be excluded from the finance charge, provided the insurance is not required, this fact is disclosed, and "any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance." While Regulation Z defines "customer" to include various accommodation parties to the transaction such as comakers, endorsers, guarantors and sureties, staff believes that the requirement of the Regulation should be read to apply only to the customer who is the insured. If that party desires the insurance after having been told the cost, it is our view that the Congressional concern over the

voluntary purchase of credit life, which is the genesis of this provision, will have been satisfied.

Congress has delegated to the Federal Reserve Board broad power to promulgate regulations under the Truth-in-Lending Act. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 371–72, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). This delegation resulted in part from an expectation that the Board's expertise would be valuable in combatting the evils to which the statute was directed. *Id.* at 373, 93 S.Ct. 1652.

■ This opinion letter represents the considered judgment of the Board's staff charged with enforcing the statute and insofar as it interprets the regulations promulgated pursuant to the statute, it is entitled to substantial deference. *See Udall v. Tallmon*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Anthony v. Community Loan & Investment Corp.*, 559 F.2d 1363, 1367 (5th Cir. 1977); *Moore v. Great Western Savings & Loan Ass'n*, 513 F.2d 688, 690 (9th Cir. 1975); *Philbeck v. Timmes Chevrolet, Inc.*, 499 F.2d 971, 976–77 (5th Cir. 1974); *Bone v. Hibernia Bank*, 493 F.2d 135, 139 (9th Cir. 1974); *Gerasta v. Hibernia National Bank*, 411 F.Supp. 176, 186 (E.D. La.1975); *English v. MCC Financial Services, Inc.*, 403 F.Supp. 679, 683 (D.Ga.), *aff'd*, 520 F.2d 941 (5th Cir. 1975).

The opinion letter's conclusion that consent to insurance by all borrowers in a multi-party transaction is not required is in accord with "the sense of the circumstances." *See Philbeck v. Timmers Chevrolet, supra*, 499 F.2d at 981. The purpose of the Truth-in-Lending Act, of course, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601 (Supp.1977). The purpose of the credit life provision is to require disclosure of the premiums as a cost of credit if the insurance is a prerequisite to obtaining the loan, or if it is not expressly consented to. Here, David Gantt consented to the insurance. Although Phyllis Gantt did not consent to the insurance by signing in the space provided, she did acknowledge, by her signature, receipt of the disclosure statement containing her husband's consent.

■ In these circumstances, each borrower was sufficiently informed that the cost of insurance was not a cost required to obtain this loan. This is all the information about credit life insurance that the borrowers needed in order to compare this loan with other available forms of credit. A further disclosure requirement would have been needless formalism.

Adoption of appellants' argument would create a serious practical problem when one borrower specifically consents to insurance and the other does not. The premiums would then be included in the principal amount of the consenting borrower but would have to be included in the finance charge of the nonconsenting borrower. In *Mason v. General Finance Corp. of Virginia*, 401 F.Supp. 782, 790 (E.D.Va.1975), *modified in*, 542 F.2d 1226 (4th Cir. 1976), Judge Merhige pointed out:

If [appellants'] argument were accepted by the Court, however, creditors would be obliged, in circumstances like the instant case, to give co-obligors disclosure statements which revealed different "amounts of finance charge" and different "annual percentage rates" for each. Disclosure statements which reveal different costs of credit for the same transaction, the Court believes, would have the effect of confusing and misleading consumers and would make it more difficult for consumers to make informed judgments about the comparative cost of credit.

Appellants' position, if it were accepted, might lead not only to meaningless disclosure but in some circumstances to unnecessary confusion of the borrower.

We therefore think the interpretation of the Federal Reserve Board staff provides the answer to this question that will best enhance the statutory purpose: furthering the informed use of credit. Particularly, in

view of the deference to be accorded that ruling, we cannot say the District Court erred in rejecting appellants' contention.

## II.

Appellants also contend that appellee's failure, in this refinancing transaction, to include in the new finance charge the difference between unearned finance charge rebates as calculated under the actuarial method and the Rule of 78's method violated 12 C.F.R. § 226.8(j).

Under 12 C.F.R. § 226.8(j), a refinancing is treated as a new transaction for which a new disclosure is required. As part of this disclosure, "any unearned portion of the finance charge which is not credited to the existing obligation shall be added to the new finance charge and shall not be included in the new amount financed." *Id.* The apparent purpose for this portion of Regulation Z is to assure that, if the effect of refinancing is the loss of prepaid interest on the existing obligation, this loss is reflected in the cost of obtaining the new credit.

Appellants claim that the lender's mere identification of the Rule of 78's as the method of computing the unearned portion of the finance charge was an inadequate disclosure and violated this provision.

It is common practice in the consumer lending business to precompute interest on loan transactions. The lender computes the total finance charge to be paid during the life of the loan, adds this to the principal, and divides this total among the periods in which payment is to be made to compute equal, periodic payments. This practice, while convenient in many ways, *see* Comment, *Rule of 78's and the Required Disclosures Under Regulation Z*, 23 Kan.L.Rev. 709, 711 (1975), creates problems when the loan is prepaid. At any given time, the total obligation "consists of both the outstanding principal and the portion of the finance charge that has not yet been earned by the lender." *Id.* at 711–12. Most state small loan laws require, *see, e. g.*, Mo.Rev. Stat. § 408.170 (1969),[2] and many small loan contracts provide, that if an obligation is prepaid, this unearned portion of the finance charge is to be deducted from the total obligation.

Computation of unearned finance charges by means of the Rule of 78's method is expressly recognized and authorized under Missouri law, the law of the situs in this case. Mo.Rev.Stat. § 408.170 (1969). An alternative method is the actuarial method.[3] Under both methods, the amount

**2.** Mo.Rev.Stat. § 408.170 (1969) provides:

1. If a note or loan contract providing for an amount of interest, added to the principal of the loan is prepaid in full (by cash, renewal, or refinancing) one month or more before the final installment date, the lender shall either:

(1) Recompute the amount of interest earned to the date of prepayment in full on the basis of the rate of interest originally contracted for computed on the actual unpaid principal balances for the time actually outstanding; or

(2) Give a refund of a portion of the amount of interest originally contracted for which shall be computed as follows: The amount of the refund shall be as great a proportion of such amount of interest as the sum of the full monthly balances of the contract scheduled to follow the installment date after the date of prepayment in full bears to the sum of all the monthly balances of the contract, both sums to be determined according to the payment schedule provided by the contract; provided, however, that if prepayment in full occurs during the first install-

ment period, interest shall be recomputed and charged only for the actual number of days elapsed. When the period before the first installment is more or less than one month, the portion of the interest earned for such period shall be determined by counting each day in such period as one-thirtieth of a month and one-three hundred and sixtieth of a year.

**3.** The actuarial method involves a series of computations. As each periodic payment on a loan with a precomputed finance charge is received, the interest due for the period is calculated using the annual percentage rate. The payment is applied first to interest and then to principal. Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions*, 55 B.U.L.Rev. 331, 336 (1975) (hereinafter Hunt). When a subsequent payment is received, the process is repeated, using the new principal as the basis for calculation. When prepayment occurs, the outstanding obligation is limited to the current principal amount. The difference between this amount and the total of the remaining scheduled payments is the un-

of interest deemed to be earned by the lender is greatest in the earlier months; it is then that the borrower has use of the greatest portion of principal. Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions*, 55 B.U.L.Rev. 331, 338 (1975) (hereinafter Hunt).

The Rule of 78's method, however, allocates a greater portion of the finance charge to the creditor in the earlier part of the period than does the actuarial method. In some cases, the results obtained under the Rule of 78's closely approximate those of the actuarial method. *See Bone v. Hibernia Bank, supra*, 493 F.2d at 137; H. Kripke, *Consumer Credit Regulation: A Creditor-Oriented Viewpoint*, 68 Colum.L. Rev. 445, 455 (1968). In other circumstances, however, the difference can be substantial. *See* Hunt, *supra*, at 338.

It is generally accepted that calculations under the Rule of 78's are less burdensome and expensive than the repeated calculations of monthly principals required by the actuarial method. *See* Comment, *Rule of 78's and the Required Disclosures Under Regulation Z*, 23 Kan.L.Rev. 709, 711 (1975); Comment, *Consumer Protection: Truth-in-Lending Disclosure of the Rule of 78's*, 59 Iowa L.Rev. 164, 169 (1973). Therefore, it is widely used by banks and other consumer lenders. *See Bone v. Hibernia Bank, supra*, 493 F.2d at 137.

The Federal Reserve Board has taken the position, adopted by many courts, that the difference between amounts calculated under the Rule of 78's and the actuarial method is not a "prepayment penalty," and hence, disclosure is not required by 12 C.F.R. § 226.8(b)(6). 12 C.F.R. § 226.818(b); *see Bone v. Hibernia Bank, supra*, 493 F.2d at 140–41. The Board has stated that § 226.8(b)(6) applies only to loans on which

interest is not computed and is inapplicable to the Rule of 78's. 12 C.F.R. § 226.818(b).

The Board has also stated that because of the difficulty of explaining the Rule of 78's in a disclosure statement, mere identification of the rule by name is a sufficient disclosure. 12 C.F.R. § 226.818(c). The Board has rejected the argument that such identification is inconsistent with 12 C.F.R. § 226.8(b)(7), requiring "[i]dentification of the *method* of computing any unearned portion of the finance charge in the event of prepayment . . . ." (emphasis supplied) The courts have accepted this position. *See Grant v. Imperial Motors*, 539 F.2d 506, 509 (5th Cir. 1976); *Gillard v. Aetna Finance Co., Inc.*, 414 F.Supp. 737, 746–47 (E.D.La.1976); *Roberts v. National School of Radio and Television Broadcasting*, 374 F.Supp. 1266, 1269–70 (N.D.Ga. 1974); *Hamilton v. G. A. C. Finance Corp.*, 5 Cons.Cred.Guide (CCH) ¶ 98,804 at 88,484 (N.D.Ga. Feb. 26, 1974). *See also Kenney v. Landis Financial Group, Inc.*, 349 F.Supp. 939, 947 (N.D.Iowa 1974); *Richardson v. Time Premium Co.*, [1969–1973 Transfer Binder] Cons.Cred.Guide (CCH) ¶ 99,272 at 89,238 (S.D.Fla. Sept. 14, 1971). *But see Ballew v. Associates Financial Services Co.*, (D.Neb.1976); *Scott v. Liberty Finance Co.*, 380 F.Supp. 475 (D.Neb.1974); *Johnson v. Associates Finance, Inc.*, 369 F.Supp. 1121 (S.D.Ill.1974). Requiring anything more than identification of the Rule in a disclosure statement would be so confusing as to be contrary to the purposes of the Truth-in-Lending Act.

In this appeal, appellants argue that because this was a refinancing transaction, greater disclosure was required. They contend that, on refinancing, the difference between the amount calculated under the Rule of 78's and the actuarial method constitutes an "unearned portion of the finance

earned portion of the finance charge. Hunt, *supra*, at 336.

Under the Rule of 78's method, unearned finance charges, on a loan in which finance charges have been precomputed, are determined in a single computation using a mathematical formula. The lender computes a fraction, the numerator of which is the sum of the

series of integers between 1 and the number of payments yet to be made. The denominator is the sum of a series of integers between 1 and the number of payments originally contracted for. This fraction is multiplied by the total precomputed finance charge to determine the unearned portion of that charge. *See* Hunt, *supra* at 333–36.

charge which is not credited to the existing obligation . . ." and should have been disclosed as part of the new finance charge. *See* 12 C.F.R. § 226.8(j).[4]

■ The Truth-in-Lending Act does not require the lender to use any particular method of computing unearned finance charges; rather, the statute is aimed solely at assuring that the method ultimately used by the lender is disclosed to the consumer. *Bone v. Hibernia Bank, supra,* 493 F.2d at 138; *see* 15 U.S.C. § 1601. The Board has indicated in its interpretive rulings that use of the Rule of 78's is an acceptable method of computing unearned interest. 12 C.F.R. § 226.818(b). The law of Missouri, the state where this transaction was consummated, permits the lender to compute refunds of prepaid interest under the Rule of 78's. *See* Mo.Rev.Stat. § 408.170 (1969). A principal advantage of this method is to avoid the more difficult computations required by the actuarial method. *See* Comment, *Rule of 78's and the Required Disclosures Under Regulation Z,* 23 Kan.L.Rev. 709, 711–12 n.18 (1975); Comment, *Consumer Protection: Truth-in-Lending Disclosure of the Rule of 78's,* 59 Iowa L.Rev. 164, 169 (1973).

Appellant's construction would require the lender, on refinancing, to compute unearned interest under both methods. This would eliminate the advantage. We are reluctant to reach this result in the absence of a clear directive from Congress or the Federal Reserve Board. Moreover, appellants' interpretation would effectively require the lender to explain the source of the unearned interest included in the new finance charge, which would require explanation of the Rule of 78's. This would create problems the Board sought to avoid by requiring disclosure only of the method by which prepaid interest is computed, rather than an explanation of the method, which is necessarily difficult. *See* 12 C.F.R. § 226.-818(c); *Bone v. Hibernia Bank, supra,* 493 F.2d at 139–41.

■ We hold that the disclosure made in this case was all that the statute and applicable regulation required. The regulation is not arbitrary or capricious but rather is within the discretion delegated to the Federal Reserve Board. We affirm the judgment of the District Court.[5]

HEANEY, Circuit Judge, concurring and dissenting.

I agree that it was unnecessary to include the insurance premiums on David Gantt's life in the finance charge because Phyllis Gantt failed to sign the form authorizing the life insurance. I disagree that it was unnecessary to include in the new finance charge the difference between the unearned finance charge rebates as calculated actuarially and under the Rule of 78's. I conclude that the difference was a "penalty" for purposes of 12 C.F.R. § 226.8(b)(7) and should have been included in the new finance charge. *See* 12 C.F.R. § 226.8(j); *Ballew v. Associates Financial Services Co.,* CV 75–L–119 (D.Neb. December 28, 1976).

The Truth-in-Lending Act is designed to assist consumers in understanding the true costs of using credit. 15 U.S.C. § 1601; Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions,* 55 B.U.L.Rev. 331, 349 (1975) (hereinafter Hunt). This goal is frustrated when the Rule of 78's is used to calculate the

---

4. We reject appellants' assumption that the phrase "unearned portion of the finance charge" in § 226.8(j) necessarily refers to the computation under the actuarial method. *See Scott v. Liberty Finance Co.,* 380 F.Supp. 475, 478–79 (D.Neb.1974). When state law permits, and the contract provides, that this computation is to be made under the Rule of 78's, the computation under that rule is the "unearned portion of the finance charge." *See* Hunt, *supra* at 354–55.

5. This case was reargued due to the death of Mr. Justice Tom C. Clark, a member of the original panel sitting by designation. At the reargument, counsel for appellants suggested that the lender should at least have disclosed that the refund of unearned finance charges computed under the Rule of 78's was likely to be less than if it had been computed under the actuarial method. While such information might be both useful and meaningful, to so hold would amount to judicial legislation in an area plainly committed to agency discretion. We decline the invitation to enter this field.

unearned finance charge since the true amount of the unearned finance charge is concealed from the consumer. A consumer receiving a rebate of the unearned finance charge computed according to the Rule of 78's *always* receives less than if the calculation was performed actuarially. Hunt, *supra* at 338. The consumer, in effect, is paying an additional charge over and above the interest actually earned up to that point. *Ballew v. Associates Financial Services Co., supra.*[1]

The problem is compounded by the frequency of refinancing transactions. Since the penalty will always cause the yield to the creditor upon prepayment to exceed the true interest rate disclosed in the contract, Hunt, *supra* at 347, the creditor has a strong incentive to encourage prepayment. Existing data indicates that creditors are usually successful; approximately eighty percent of small loan transactions involve refinancing or consolidation and approximately fifty percent involve four or more consolidations. Hunt, *supra* at 333.

The actuarial method lies at the heart of the Act. *See* 15 U.S.C. § 1606; Hunt, *supra* at 336 n.23. I cannot reach any other conclusion than that Congress intended that this method be used. In an earlier day, there may have been some justification for using the Rule of 78's. Today, however, there is no excuse for continuing its use given the prevalence of actuarial tables and calculators. The difficulty and expense of utilizing the actuarial method are vastly overestimated. *See* Hunt, *supra* at 359–360.

I fully understand that deference is to be accorded the Federal Reserve Board. However, a careful reading of their analysis with respect to the use of the Rule of 78's makes it apparent that the Board failed to make the thorough and independent study necessary to justify their conclusion.

As the rebate calculated by the Rule of 78's was less than the unearned portion of the finance charge, the lender should have included this difference in the new finance charge. The failure to do so resulted in a violation of 12 C.F.R. § 226.8(j).

With respect to this issue, I would reverse the judgment of the District Court.

---

1. This difference is not as insubstantial as the majority suggests. For example, the maximum dollar error is $6.16 in a 24-month contract with a 24 percent annual percentage rate per $1,000 financed, with prepayment in the eighth month. This error increases dramatically if both the rate and the term increase. The maximum dollar error is $1,157 in a 144-month contract with a 14.12 percent annual percentage rate if the amount financed is $15,000. *See* Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions*, 55 B.U.L.Rev. 331, 345–347 (1975).