Ronald C. **DAVIS** and Bari Davis,
Plaintiffs-Appellants,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION**, Defendant-Appellee.

No. 79–2428
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 30, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Joseph W. Thomas, New Orleans, La., for plaintiffs-appellants.

Baham & Churchill, Charles F. Thensted, Earl S. Eichin, Jr., New Orleans, La., for defendant-appellee.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

This is an appeal from a judgment dismissing appellants' action to rescind a consumer credit transaction under 15 U.S.C. § 1635 and granting appellee's counterclaim for summary judgment on the balance of the underlying debt plus attorney's collection fees. Although we disagree with the reasoning of the court below, we agree with the result and affirm.

Contemporaneously with the extension of consumer credit by appellee's predecessor in interest, the Republic National Bank, to the appellants, the lender and borrowers entered into "An Agreement Pertaining to the Transfer or Encumbrance of Property." Among other things, the Agreement provided that the proceeds of the loan were to be applied solely to improvements to the borrowers' personal residence; that the borrowers were precluded from selling their home unless either the Note evidencing the loan were paid in full or the transferee, "who must be acceptable to the Bank," agreed to accept *in solido* liability on the Note with the borrowers; that the borrowers thereby assigned to the Bank any and all rental income which their home might produce, presumably, although the Agreement does not so state, for the purpose of applying such income to any outstanding obligation on the Note; and that the bor-

rowers would refrain from further encumbering their home in excess of one-fourth of the principal amount of the Note. A breach of any one of these conditions subjected the borrowers to immediate acceleration of any outstanding obligation on the Note.[1]

We agree with the district court that the Agreement is a "security interest" as that term is defined in Regulation Z, 12 C.F.R. § 226.2(gg), inasmuch as it "secures payment or performance of an obligation." See *Elzea v. National Bank of Georgia*, 570 F.2d 1248 (5th Cir. 1978); *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978). The district court concluded, however, that the Agreement did not create a security interest *"in any real property* which is used or is expected to be used as the residence" of the borrowers, as is required by § 1635(a). (Emphasis added.) Instead, the court concluded that the security interest was in personalty, such as the rental income or proceeds of a sale.

■ Recognizing that the judgment call is a close one, we are unable to agree that there is no real property security interest here for § 1635 purposes. While it is true, as the district court points out, that default under the terms of this Agreement leaves the lender with no more recourse than unsecured creditors generally enjoy against defaulting creditors, we think that the nature of the events of default spelled out in the Agreement bring this transaction within the intended scope of the rescission remedy. The Agreement imposes substantial limitations on the disposition of the borrowers' personal residence. It burdens any sale, leasing, or borrowing against equity in their home by the borrowers unless the terms thereof are agreeable to the lender. If the lender is dissatisfied with the borrowers'

intended disposition of their home, they must either forego these incidents of ownership or face immediate acceleration of any and all outstanding liability on the Note. Although the legislative history is virtually nonexistent, see *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 651 (9th Cir. 1974), Congress' undoubted concern in creating the rescission remedy was with the special character of peoples' homes as an asset in consumer credit financing. When a consumer credit transaction results in the acquisition of a security interest in the home of the borrower, no degree of disclosure, no matter how complete, was thought sufficient in the absence of the borrower's having a completely unilateral right of rescission for at least three days after the transaction. We think that concern is equally justified where foreclosure sale of the borrowers' home is not available under the security interest created, but valuable rights in the debtors' home, the kind the debtor will have to live without during the life of the loan, have nonetheless been conveyed.

It remains only to be seen whether the Davises' right of rescission has survived the three-day "cooling off" period provided for in § 1635.[2] Although the district court's disposition of the case prevented it from reaching this issue, we affirm its judgment on the basis of our review of the plaintiff's alleged grounds for rescission.

The Davises base their claim for rescission on the failure to itemize a $25 charge on the required loan disclosure form as a $15 charge for legal fees and a $10 charge for documentation fees, in violation of § 1639(a)(2) and 12 C.F.R. § 226.8(a). This itemization is disclosed on a separate loan voucher form of even date with the loan

---

1. R., 72.

2. 15 U.S.C. § 1635(a) provides that in any consumer credit transaction resulting in the acquisition of a security interest by the lender in the home of the borrower the latter "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction *or* the delivery of . . . all . . . material disclosures re-

quired under this part . . . ." (Emphasis added.) § 1635(f) provides in turn that the borrower's right of rescission shall in any event expire three years after the date of consummation of the transaction, "notwithstanding the fact that . . . any . . . material disclosures required under this part have not been delivered to the obligor."

disclosure statement.[3] In addition, the Davises complain that the disclosure statement fails adequately to describe on its face the type of security agreement represented by the "Agreement Pertaining to the Transfer or Encumbrance of Property," discussed above, a separate copy of which was also given to the Davises at the time they entered into their transaction with Republic National Bank. 12 C.F.R. § 226.8(b)(5).

■ Although we have little doubt that these complaints would support an action for statutory penalties under § 1640(a), see, e. g., Pollock v. General Finance Corp., 535 F.2d 295 (5th Cir. 1976), it is undisputed that any claim for penalties the Davises might have had are now time barred by § 1640(e). In contrast with the ready availability of statutory penalties under § 1640 for even slight nondisclosures, however, the borrowers' right of rescission under § 1635(a) and (f) continues for more than three days after the extension of credit only if the lender has failed to make "material disclosures required under this part" (emphasis added), and continues, for up to three years, only so long as the lender fails to make such material disclosures.

■ We have no doubt that, by conditioning the continuing availability of rescission upon instances of material nondisclosure, Congress intended that rescission would not be appropriate in every case in which penalties would be. As a member of this Panel has earlier concluded, "[t]he Congress wisely prescribed a limited civil penalty for even 'technical' violations of the statute but circumscribed the more harsh rescission remedy by requiring that liability therefor depend on a 'material' violation." Ivey v. United States Department of Housing and Urban Development, 428 F.Supp. 1337 (N.D.Ga.1977) (Hill, J.). We further agree with the Ivey court that, in order for a nondisclosure to be material for rescission purposes under § 1635, the plaintiff must show at the least that the nondisclosure of which he complains was that "which a reasonable consumer would view as signifi-

cantly altering the 'total mix' of information made available. That is, the omission need not be so important that a reasonable consumer would probably change creditors. However, the information must be of some significance to a reasonable consumer under the circumstances in his 'comparison shopping' for credit." Ivey, supra, at 1343.

■ We conclude that the nondisclosures of which the Davises complain were not material for rescission purposes. The failure to break down the $25 "other charges" figure into its component charges did not prevent them from making an otherwise fully-informed credit choice, especially inasmuch as the itemized charges were supplied on a separate statement. And the alleged failure adequately to describe on the face of the disclosure statement the type of security interest created by the Agreement, which admittedly does not lend itself to shorthand characterization, can hardly be said to be "of some significance to a reasonable consumer" in light of the explicit disclosures contained in the Agreement itself, which was executed simultaneously with the extension of credit. We do not countenance the failure of Republic National Bank to conform its disclosures to the formal requirements of the Truth-in-Lending Act and its implementing regulations. But for reasons sufficient to Congress the Davises' remedy for formal deviations from these disclosure requirements is foreclosed by the one-year limitations period contained in § 1640(e). By the same token, the separable remedy of rescission continues only in instances of material, not formal, nondisclosures. Finding none here, the judgment is AFFIRMED.

**3.** R., 73.