* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Gifton JONES, Jr., and Gracie Jones, Plaintiffs-Appellants,

v.

W. O. FITCH, Trustee, et al., Defendants-Appellees.

No. 80–3448.

United States Court of Appeals, Fifth Circuit.* Unit A

Jan. 11, 1982.

Willie L. Rose, Lexington, Miss., for plaintiffs-appellants.

William C. Spencer, Eugene D. Brown, Jr., Holly Springs, Miss., for defendants-appellees.

Before REAVLEY, RANDALL and SAM D. JOHNSON, Circuit Judges.

RANDALL, Circuit Judge:

This appeal involves an action to rescind a loan agreement, for material nondisclosures, under the Truth-In-Lending Act, 15 U.S.C. §§ 1601 *et seq.* (TILA), and for violations of the Mississippi Small Loan Regulatory Law, Miss.Code Ann. §§ 75–67–101, *et seq.* Petitioners are Gifton Jones, Jr. and Gracie Jones; respondents are National Loans, Inc. d/b/a First Mississippi Loans of Holly Springs, Mississippi, Inc. (National), W. O. Fitch, Trustee, and Clydean Fitch. Petitioners claimed that they had a right of rescission under 15 U.S.C. § 1635(a) and that the agreement was void under Mississippi law. The district court held that petitioners were not entitled to rescission under the TILA and dismissed without prejudice petitioners' claims under the Mississippi statute. We affirm.

On June 4, 1976, petitioners entered into a loan agreement with National, executing a promissory note, a security agreement and a separate deed of trust on their home. Petitioners subsequently became delinquent in their payments on this loan and entered into another loan agreement with National refinancing the previous loan. In connection with this refinancing, petitioners executed a promissory note, security agreement, separate deed of trust on their home and a waiver of rescission. National also at that time sold petitioners single credit life and credit disability insurance for Mr. Jones and dual interest property insurance on their household goods. Petitioners defaulted on this refinancing note also.

In January 1980, National instituted foreclosure proceedings. Respondent W. O. Fitch caused publication of the statutory "Notice of Trustee's Sale of Lands" beginning on January 17, 1980. In response to this notice, petitioners filed the instant lawsuit on February 1, 1980, seeking among other things, rescission of the loan agree-

ment and cancellation of the deed of trust.[1] The case was heard in the District Court for the Northern District of Mississippi on May 8, 1980. The court took the case under advisement and ordered memoranda on petitioners' asserted state law claims. On May 14, 1980, the court ruled that there was no violation of the TILA and no right to rescind under 15 U.S.C. § 1635(a) and the court refused to assert pendent jurisdiction over the state law claims. Final judgment was entered on May 27, 1980, ordering that petitioners take nothing and that their state law claims be dismissed without prejudice in order to permit petitioners to pursue those claims in state court. Petitioners appeal that judgment on three grounds: (1) they claim a continued right to rescind the loan agreement because of National's failure to identify in the disclosure statement the real property securing the loan; (2) they claim a continued right to rescind because of National's failure to include the cost of credit life and credit disability insurance in the "finance charge" portion of the disclosure statement; and (3) they claim the district court's dismissal of their state claims was an abuse of discretion.

*I. Identification of Real Property.*

 Among other things, the disclosure statement executed by petitioners indicated that the loan was secured by a Deed of Trust on real property, but did not identify the property. The disclosure statement was marked with an "X" in the box next to the sentence: "This Loan is also secured by a Deed of Trust on real property identified as follows: _____." There was no further description of the property in the space following the sentence. Petitioners contend that the failure to identify in the disclosure statement the real property securing the loan was a material nondisclosure resulting in a continued right of rescission under the TILA.

At the time of this suit, § 1635(a) provided in pertinent part:

Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, *the obligor shall have the right to rescind the transaction until midnight of the third business day following* the consumption of the transaction or *the delivery of the disclosures required under this section and all other material disclosures required under this part,* whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

(emphasis added). *See also* 15 U.S.C. § 1635(f) (limiting the time for exercise of the right of rescission to three years after consummation of the transaction). Petitioners' right of rescission, therefore, depends on whether National "failed to make 'all other material disclosures' so that the three day period did not run." *Bustamente v. First Federal Savings and Loan Assoc.,* 619 F.2d 360, 363 (5th Cir. 1980).

"[I]n order for a nondisclosure to be material for rescission purposes under § 1635," this court has acknowledged, "the plaintiff must show at the least that the nondisclosure of which he complains was that 'which a reasonable consumer would view as significantly altering the "total mix" of information made available. That is, the omission need not be so important that a reasonable consumer would probably change creditors. However, the information must be of some significance to a reasonable consumer under the circumstances in his "comparison shopping" for credit.'" *Davis v. Federal Deposit Ins. Corp.,* 620 F.2d 489, 492 (5th Cir. 1980) (quoting *Ivey v. United States Department of Housing and Urban Development,* 428 F.Supp. 1337 (N.D.Ga.1977)). We agree with petitioners that the test for

---

1. Petitioners attempted to rescind the loan agreement by letter dated February 5, 1980. By return letter dated February 6, 1980, National rejected this attempted rescission. Petition-

ers filed lis pendens notice on February 8, 1980, and on February 11, 1980, the real property was sold at the trustee's sale to Clydean Fitch.

"materiality" is an objective, rather than subjective, test, "based on what a reasonable consumer would find significant in deciding whether to use credit." *Bustamente*, 619 F.2d at 364. Nonetheless, we do not believe that under the circumstances of this case, the failure to identify in the disclosure statement the real property securing the loan constitutes a failure to make a "material disclosure" for purposes of § 1635(a). Here, the disclosure statement disclosed that the loan was secured by a deed of trust on real property, the deed of trust was executed as a part of the single transaction and there is no suggestion that petitioners did not know of the security interest being taken in their home. In such circumstances, we do not believe that the omission of a legal description of the property from the disclosure statement would be viewed by a reasonable consumer as significantly altering the total mix of information made available.

Petitioners rely on 15 U.S.C. § 1639(a)(8) in support of their argument that a description of the property on the disclosure statement was a material disclosure within the meaning of § 1635(a). Section 1639(a)(8) provides that:

> (a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:
>
> . . . .
>
> (8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identifi-

cation of the property to which the security interest relates.

Petitioners present a long list of cases allegedly supporting the proposition that a failure to adequately describe the property which is the subject of a security interest constitutes a violation of the TILA and thus continues the right of rescission under § 1635(a). These cases, however, involved actions for statutory damages under § 1640, not actions for rescission under § 1635(a). Although relief under §§ 1635(a) and 1640 is not mutually exclusive,[2] we explained in *Bustamente* that "[u]nlike the general civil liability section of the Truth-in-Lending Act, 15 U.S.C. § 1640, which provides for liability *for any* nondisclosure, the rescission provisions under 15 U.S.C. § 1635 require that the nondisclosure be material...." 619 F.2d at 363. In *Davis* we stated:

> We have no doubt that, by conditioning the continuing availability of rescission upon instances of material nondisclosure, Congress intended that rescission would not be appropriate in every case in which penalties would be. As a member of this Panel has earlier concluded, "[t]he Congress wisely prescribed a limited civil penalty for even 'technical' violations of the statute but circumscribed the more harsh rescission remedy by requiring that liability therefor depend on a 'material' violation."

620 F.2d at 492 (citation omitted). Whether or not the identification of the property in the deed of trust rather than in the disclosure statement was a technical violation of § 1639(a)(8), therefore, entitling petitioners to relief under § 1640, is not dispositive of petitioners' right of rescission under § 1635(a).[3]

**2.** *See, e. g., Gerasta v. Hibernia National Bank,* 575 F.2d 580, 583 (5th Cir. 1978).

**3.** Regulation Z § 226.8(b)(5), promulgated by the Board of Governors of the Federal Reserve Board pursuant to 15 U.S.C. § 1604, permits identification of the property to which a security interest relates in a separate document where clear identification cannot properly be made on the disclosure statement. Except in this limited circumstance, Regulation Z § 226.-8(a) requires the identification to be included in the disclosure document. *Gennuso v. Commer-*

*cial Bank & Trust Co.,* 566 F.2d 437 (3rd Cir. 1977); *cf. Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120 (5th Cir. 1980) (failure to make required disclosure on same side of one page insufficient to meet requirements of Regulation Z and resultant understatement of finance charge was material non-disclosure entitling borrower to rescission). In its recent decision in *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 208 n.5, 101 S.Ct. 2266, 2268 n.5, 68 L.Ed.2d 783, 788 n.5 (1981), the Supreme Court observed that "[t]he TILA does not state

In *Davis*, we held that the making of certain disclosures in separate statements would not result in material non-disclosures for purposes of § 1635(a), stating:

> The failure to break down the $25 "other charges" figure into its component charges did not prevent them from making an otherwise fully-informed credit choice, especially inasmuch as the itemized charges were supplied on a separate statement. And the alleged failure adequately to describe on the face of the disclosure statement the type of security interest created by the Agreement, which admittedly does not lend itself to shorthand characterization, can hardly be said to be "of some significance to a reasonable consumer" in light of the explicit disclosures contained in the Agreement itself, which was executed simultaneously with the extension of credit.

620 F.2d at 492. Here we believe that the alleged failure to adequately describe in the disclosure statement the real property securing the loan does not constitute a *material* nondisclosure for purposes of § 1635(a) in light of the simultaneous execution of the deed of trust and the reference to the deed of trust in the disclosure statement.

## II. Credit Life and Credit Disability Insurance Authorization.

■ Petitioners also contend that their right of rescission under § 1635(a) was continued by National's failure to include, as part of the "finance charge" on the disclosure statement, the charge for the credit life and credit disability insurance issued on Mr. Jones. Here they rely on 15 U.S.C. § 1605(b) and 12 C.F.R. § 226.4(a)(5). § 1605(b) provides that:

> (b) Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless

> (1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

> (2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.

Regulation Z § 226.4(a)(5) clarifies this provision as follows:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

> . . . .

> (5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

> (i) the insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

> (ii) *any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.*

that the disclosure required by the statute must be made on the face of the contract," although Regulation Z does in some instances, noting also § 226.8(b)(5). Whether or not the identification was so long that it could not be included in the disclosure statement, we do not consider the form of disclosure used here to constitute a

material nondisclosure for purposes of § 1635(a) under the circumstances of this case. The fact that Regulation Z § 226.8(b)(5) contemplates use of the form of disclosure employed here in some circumstances implies that its use does not threaten material nondisclosure within the meaning of § 1635(a).

(emphasis added). Respondents admit that "the cost of the credit life and disability insurance secured by Gifton Jones, Jr. was set out on the disclosure statement as a separate charge, rather than having been incorporated in the finance charge. (Exhibit P–1). Thus if the manner by which [National] secured this authorization is defective, an impermissible understatement of the finance charge results." They also admit that "such an understatement of the finance charge is a 'material nondisclosure' which will authorize rescission after the expiration of the three day period. *Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120, *reh. denied,* 613 F.2d 314 (5th Cir. 1980)." Respondents contend, however, that "the means of securing authorization of the insured satisfies the criteria enunciated in the above-cited statute and regulation; hence, since the finance charge was not understated, no material nondisclosure occurred which would authorize rescission."

The evidence reveals that only Mr. Jones signed the statement that he desired credit life and credit disability insurance, but that both Mr. Jones and Mrs. Jones signed the disclosure statement authorizing the listed deductions. Believing that this procedure is sufficient to satisfy the requirements of § 1605(b), we conclude that there was no material nondisclosure in listing the cost of the credit life and credit disability insurance as part of the amount financed rather than as part of the finance charge. *But cf. Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120 (5th Cir. 1980) (total failure to furnish written statement setting forth cost of insurance and option of choosing insurance as required by 15 U.S.C. § 1605(c) results in right to rescind under § 1635(a) where cost of insurance not then included in finance charge).

Our conclusion is supported by the holding of the Eighth Circuit in *Gantt v. Commonwealth Loan Co.,* 573 F.2d 520, 523 (8th Cir. 1978), which stated:

The purpose of the credit life provision is to require disclosure of the premiums as a cost of credit if the insurance is a prerequisite to obtaining the loan, or if it is not expressly consented to. Here, David Gantt consented to the insurance. Although Phyllis Gantt did not consent to the insurance by signing in the space provided, she did acknowledge, by her signature, receipt of the disclosure statement containing her husband's consent.

In these circumstances, each borrower was sufficiently informed that the cost of insurance was not a cost required to obtain this loan. This is all the information about credit life insurance that the borrowers needed in order to compare this loan with other available forms of credit.

*Accord, Mason v. General Finance Corp. of Virginia,* 401 F.Supp. 782, 789 (E.D.Va. 1975), *rev'd on other grounds,* 542 F.2d 1226, 1229 n.5 (4th Cir. 1976). *Contra, Clemmer v. Liberty Financial Planning, Inc.,* 467 F.Supp. 272 (W.D.N.C.1979); *Ray v. Acme Finance Corp.,* 367 So.2d 186 (Miss. 1979) (dealing with *joint* insurance). *See also, Doggett v. Ritter Finance Co., Inc. of Louisa,* 528 F.2d 860 (4th Cir. 1975) (upholding such disclosure although not specifically addressing the issue of co-borrower signatures).

Petitioners argue that Regulation Z § 226.4(a)(5) requires the signature of Mrs. Jones as a "customer" within the meaning of that section.[4] It is certainly possible to read § 1639 as requiring the signature of both petitioners on the insurance authorization, *see, e. g., Clemmer, supra* at 274, but we agree with the Eighth Circuit that § 1639 should not be so read. The Eighth Circuit in *Gantt* observed that the language of the statute and the regulation, the legislative history of the statute, a subsequent opinion letter of the staff of the Federal Reserve Board and the purpose of the TILA all support the conclusion that the additional signatures are not required. The essential disclosure for credit shoppers is whether

4. "Customer" is defined in Reg. Z § 226.2 as "(1) a cardholder or (2) a natural person to whom consumer credit is offered or to whom it is or will be extended, and includes a comaker, endorser, guarantor, or surety for such natural person who is or may be obligated to repay the extension of consumer credit."

the insurance is required by the creditor or is optional, and thus whether it constitutes a cost of credit. This disclosure is sufficiently made where the insurance authorization signed by the "customer desiring such insurance" is acknowledged in the disclosure statement signed by all of the customers. As the court in *Gantt* added: "A further disclosure requirement would have been needless formalism." 573 F.2d at 523. Because the authorization in this case meets the requirements of § 1605(b), the exclusion of the cost of the insurance from the finance charge was not an understatement of the finance charge. We therefore conclude that there was no material nondisclosure by National with respect to the charge for credit life and disability insurance on Mr. Jones, and, therefore, no right to rescission under § 1635(a).

### III. The Pendent State Law Claims.

■ In addition to alleging violations of the TILA, petitioners alleged violations of the Mississippi State Small Loan Regulatory Law, Miss.Code Ann. § 75–67–101, *et seq.* Although the district court requested memoranda on the state claims from both parties prior to issuing its ruling, the court chose to dismiss the state claims without prejudice so that petitioners might pursue these claims in state court. Petitioners contend that the district court's refusal to rule on these state law claims was an abuse of discretion and seek to have this court declare the loan agreement void under the state statute.

Petitioners assert, relying on *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), that because the federal and the state claims arose from the same transaction the district court erred in not taking pendent jurisdiction over the state claim. Under *Gibbs*, a federal court has the *power* to hear a pendent state law claim where the court has jurisdiction over a substantial federal claim and the federal and state claims derive from a "common nucleus of operative facts." *Id.* at 725, 86 S.Ct. at 1138. In this case, the district court stated that the *Gibbs*

"common nucleus" test was clearly satisfied. The issue in this case, however, is not whether the district court had the power to exercise pendent jurisdiction but whether the district court abused its discretion by not exercising that power. *See Jackson v. Stinchcomb*, 635 F.2d 462 (5th Cir. 1981).

In their original complaint, petitioners claimed that respondents had violated the Mississippi Small Loan Regulatory Act in three ways: "(a) Selling Plaintiffs credit life and credit disability insurance without Plaintiffs' authorization; (b) Charging an interest rate for said loan at a rate in excess of that allowed by law; and (c) By selling Plaintiffs the insurance through an unlicensed agent." At the close of the trial, petitioners asserted three additional claims under the Mississippi statute, which they believed were supported by the evidence adduced at trial: "(d) By selling Plaintiffs property insurance coverage based on the total of payments rather than the value of the collateral given to secure the loan, which was less; (e) By obtaining a commission for the sale of all three insurance policies; and (f) By selling Plaintiffs dual interest property insurance without their authorization." After considering the memoranda submitted by the parties at the close of the evidence, the district court concluded that it should not exercise jurisdiction over the state law claims because some of the claims had not been pled, resulting in respondents having not had notice that the claims were a part of the suit and having not had an opportunity to defend against the claims. The district court also abstained in the face of what it considered a substantial issue of state constitutional law which had not been addressed by the Mississippi Supreme Court. In light of these considerations, we conclude that the refusal of the district court to assert pendent jurisdiction over the state law claims was not an abuse of that court's discretion. The Supreme Court stated in *Gibbs*:

It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to liti-

gants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188]. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

383 U.S. at 726, 86 S.Ct. at 1139. *Accord, In re Carter*, 618 F.2d 1093 (5th Cir. 1980).

Petitioners contend that considerations of fairness weigh in their favor rather than in favor of respondents, arguing that it was unfair to dismiss the state claims after petitioners had devoted substantial time to the proof of those claims. The stage at which the federal claims are disposed of is certainly of significance to the exercise of the court's discretion, *Gibbs, supra*, at 726–27, 86 S.Ct. at 1139, but here the fairness to respondents outweighs the inconvenience to petitioners. The original complaint stated three specific allegations of violations of the Mississippi statute, thus implying that these were petitioners' claims under that statute. Where petitioners articulated additional state law violations, on the basis of the evidence adduced at the trial, only after the close of the evidence, respondents were not given a fair opportunity to defend against these claims.[5] Thus a refusal by the district court to decide these claims was not an abuse of discretion. Petitioners argue that

they were not allowed a preliminary hearing at which the facts necessary to these additional claims could have been discovered, but petitioners do not contend that they were denied other means of discovery which in fact took place.[6] Given the substantial unfairness of deciding state law claims to which respondent was not given an ample opportunity to respond, we believe that the district court was well justified in refusing to decide these claims.

In addition, we agree that this exercise of discretion was further supported by the existence of an issue of state constitutional law not previously addressed by the state supreme court.[7] *See Gibbs, supra*, at 726, 86 S.Ct. at 1139. We agree with petitioners that a mere raising of a constitutional claim by respondents should not automatically defeat jurisdiction. The existence of such a claim is, nonetheless, a factor to be considered. Here the district court concluded that the state claims asserted by petitioners involved substantial novel questions of state law. That fact clearly adds support to the district court's decision to dismiss the state claim.

## IV. Conclusion.

Neither the omission in the disclosure statement of a legal description of the real property securing the loan nor the absence of Mrs. Jones' signature on the request for

---

5. Petitioners' observation that "notice" pleadings are sufficient in federal courts under Fed. R.Civ.P. 8 is not compelling. It is just as true that amendment of pleadings is permitted, to conform to the evidence, only where the unpled issues have been tried by consent and where it will not result in substantial prejudice to a party. *See, e. g., International Harvester Credit Corp. v. East Coast Truck*, 547 F.2d 888 (5th Cir. 1977).

6. Although petitioners contend that they were not supplied writings requested in discovery which would have led to the discovery of their additional claims, respondents argue that copies of the insurance policy in question were supplied both at the consummation of the transaction and in response to petitioners' discovery requests. If respondents did not comply with petitioners' valid requests for documents in discovery, petitioners could have

sought the aid of the court to force the desired discovery. The record does not disclose their having done so, and we must reject petitioners' argument that the district court abused its discretion in dismissing the state claims where this lack of document discovery precluded their earlier discovery of all of their claims.

7. In their post-trial memoranda, respondents challenged the constitutionality of the regulation issued by the Mississippi Department of Bank Supervision on March 28, 1977 which provides: "The fire, theft, extended coverage and inland marine insurance shall be written for the total payments or for the value of the property, whichever is less." They argued that it was an unconstitutional delegation of legislative authority to the executive branch, citing several cases invalidating Mississippi statutes on that basis.

credit life and disability insurance on Mr. Jones constituted a failure to make material disclosures continuing petitioners' right of rescission under § 1635(a) under the circumstances of this case. The dismissal without prejudice of petitioners' state law claims was not an abuse of discretion. The decision of the district court is therefore affirmed.

AFFIRMED.