[No. B001511. Second Dist., Div. Seven. Apr. 3, 1985.]

LOUIS LUSKIN & SONS, INC.,
Plaintiff, Cross-defendant and Appellant, v.
MYRON SAMOVITZ et al.,
Defendants, Cross-complainants and Appellants.

**[Opinion certified for partial publication.*]**

*The entire opinion is certified for publication pursuant to rules 976 and 976.1 of the California Rules of Court except parts C and D of the Discussion.

534

---

COUNSEL

Paul M. Guyer, Richard J. Meehan and Evan L. Murri for Plaintiff, Cross-defendant and Appellant.

Shugar & Luster and Allen D. Shugar for Defendants, Cross-complainants and Appellants.

OPINION

JOHNSON, J.—The major issue in this case is whether the right to cancel a home solicitation contract, Civil Code sections 1689.5-1689.13, is limited to contracts made at the buyer's home. We find section 1689.5, subdivision (a) clearly and unambiguously makes the statute applicable to any contract for the sale of goods or services made anywhere other than the "appropriate trade premises" of the seller as defined in the statute. We also find under the facts of this case the seller is not entitled to recover under the theory of quantum meruit. The remaining issues are discussed in the unpublished portion of this opinion because they do not meet the standards for publication. (Cal. Rules of Court, rule 976.)

## I. FACTS AND PROCEEDINGS BELOW

The defendants, Dr. and Mrs. Samovitz, were the owners of a vacant house in Santa Monica. On November 8, while visiting the house, Ms. Samovitz discovered one of the toilets overflowed when flushed. Ms. Samovitz called a plumbing firm, plaintiff Luskin & Sons, which dispatched a plumber to the premises that day. The plumber ran a snake through the toilet but was unable to clear the blockage. Another Luskin plumber met Ms. Samovitz at the premises the following day, a Friday. This plumber told Ms. Samovitz the main sewer line needed to be replaced. He prepared a contract for the work for $7,000 and Ms. Samovitz signed it. It is undisputed the contract did not contain the cancellation notice required in home solicitation contracts under Civil Code sections 1689.7 and 1689.8. Later in the day, Dr. Samovitz had two conversations with Martin Luskin in which they discussed the price of the work and terms for payment. Dr. Samovitz told Luskin he wanted to obtain some other estimates and not to do any work until Luskin heard back from him on Monday. On Sunday, the Samovitz' went to the premises and found Luskin had already started work. They found a trench six feet deep running down the length of the driveway. Cement from the driveway was stacked on the grass alongside.

On Monday, Dr. Samovitz called Martin Luskin and told him he was "shocked" Luskin had started the work without awaiting further authorization. He did not order Luskin to stop work.

The Samovitz' paid Luskin $2,500 for the work. Luskin sued to recover the balance of the contract price and the Samovitz' cross-complained for recission of the contract based on fraud.

After a court trial, judgment was entered in favor of the Samovitz' on Luskin's complaint and on their cross-complaint. Both parties appeal. Lus-

kin contends among other things the home solicitation statute does not apply to this transaction and, even if it does, Luskin is entitled to recover from the Samovitz' under quantum meruit. The Samovitz' appeal from the amount of the judgment on their cross-complaint. We affirm the judgment.

## II. DISCUSSION

A. *The Home Solicitation Statute Applies to Any Contract for the Sale of Goods or Services Made Anywhere Other Than the Seller's Appropriate Trade Premises.*

In the case before us the contract was not entered into at the "appropriate trade premises"[1] of the seller nor at the home of the buyer. It was entered into at a vacant house owned by the buyer. ■ Although the home solicitation statute is commonly thought of as protecting consumers from the high pressure sales tactics of door-to-door solicitors,[2] the clear, unambiguous language of the statutes gives it a much broader application. Section 1689.5 provides, "As used in Sections 1689.6 to 1689.11, inclusive: (a) 'Home solicitation contract or offer' means any contract, whether single or multiple, or any offer which is subject to approval, for the sale, lease or rental of goods or services or both, made at other than appropriate trade premises in an amount of twenty-five dollars ($25) or more including any interest or service charges. . . ." As is evident from this language, the test for applicability of the statute is not whether the contract is made at the buyer's home but whether it is made somewhere other than the seller's place of business. The statute applies to deals made at swap meets, in airplanes or at property owned by the buyer but not used as a residence, as in the case at bench.[3]

As pointed out in *Weatherall,* the usual door-to-door sales situation is not the only scenario in which pressure sales tactics are found. (71 Cal.App.3d

[1] Section 1689.5, subdivision (b) defines "appropriate trade premises" as "premises at which either the owner or seller normally carries on a business or where goods are normally offered or exposed for sale in the course of a business carried on at those premises." The record shows Luskin carries on its plumbing business from an office in Los Angeles.

[2] See *Weatherall Aluminum Products Co.* v. *Scott* (1977) 71 Cal.App.3d 245, 248 [139 Cal.Rptr. 329]; Legislative Committee Commission comment—Assembly 1971 Addition (1973) 9 West's Annotated California Codes, Civil Code at pages 512, 513; Note, *A New Remedy For California Consumers: The Right To Cancel A Home Solicitation Contract* (1972) 3 Pac.L.J. 633.

[3] We recognize that under the Federal Trade Commission rules the result under the facts here might be different. The federal rule exempts transactions in which the buyer has initiated the contact and specifically requested the seller to visit his home for the purpose of repairing or performing maintenance upon the buyer's personal property. (16 C.F.R. § 429.1, Note 1, subd. (a)(5) (1984).) However, the FTC rule is not intended to annul state laws which provide the consumer greater protection. (*Id.,* at Note 2, subds. (a) and (b).)

at p. 248.) In the case before us, Ms. Samovitz, who usually let her husband handle family business, and knew little about plumbing, was dealing with a professional plumber who assured her $7,000 was a fair, competitive price for the work. When she hesitated to sign the contract, the plumber told her "this is the proposal of the price, and your husband is going to talk to [Martin Luskin] and if there is a problem with it, don't worry about it." Before this contract was signed, the plumber had already proceeded, without authorization, to break up part of the concrete driveway, dig a two-foot hole and break the clay sewer pipe. The statements and acts of the Luskin plumber undoubtedly exerted some pressure on Ms. Samovitz to sign the contract.[4] (Cf. *People* v. *Toomey* (1984) 157 Cal.App.3d 1 [203 Cal.Rptr. 642] [telephone sales held to exert sufficient pressure on the consumer to bring them within the home solicitation statute even though the consumer could easily hang up the telephone].)

We do not believe the result we reach in this case is unduly harsh to merchants. To the contrary, by applying a bright line test for the applicability of the home solicitation statute, we obviate the need for merchants to attempt to train their employees to distinguish, from a myriad of possible situations, the cases in which the statute does and does not apply. As stated in *Weatherall*, "Merchants, put on notice by the statute, can easily and inexpensively protect themselves, however, by including a right to cancel provision and an accompanying notice of cancellation as a matter of course in all contracts signed outside their trade premises." (71 Cal.App.3d at p. 249.)

B. *Luskin Is Not Entitled to Recover on the Theory of Quantum Meruit Under the Facts of This Case.*

Relying on *Beley* v. *Municipal Court* (1979) 100 Cal.App.3d 5 [160 Cal.Rptr. 508], Luskin argues even if the Samovitz' can avoid the written contract by asserting the home solicitation statute Luskin is entitled to recover under quantum meruit for the reasonable value of the improvements to the Samovitz property. *Beley* did not hold that as a general rule the seller can recover on quantum meruit even if he has proceeded in violation of the home solicitation statute. To the contrary, the court in *Beley* recognized such a rule would defeat the purposes of the statute, especially section

---

[4]Although the contract involved repairs to a sewer line no emergency was involved because the house was unoccupied. Luskin does not contend this case is subject to the statutory exception for emergency repairs (§ 1689.13) nor did Ms. Samovitz sign a statement waiving the right to cancel as required by that section.

1689.11.[5] (*Beley, supra,* 100 Cal.App.3d at p. 9.) The court merely found section 1689.11 was not intended to apply to the unusual facts of the case before it.

■ Section 1689.11 was intended to prevent the seller from defeating the purposes of the statute by performing the contract during the three-day cancellation period thereby pressuring the buyer to pay for the work or find someone else to make the repairs. " 'Section 1689.11 (c) of the Civil Code, besides providing for no compensation in such a case, requires the seller to "restore the property to substantially as good a condition as it was at the time the services were rendered." ' " (*Beley, supra,* 100 Cal.App.3d at p. 9.)

In *Beley* the parties entered into a contract for extensive remodeling of the buyer's home over a three-month period. The contract was substantially completed before the buyers exercised their right to cancel. Under these facts, the court found, "This case does not involve an attempt to evade the statute or to pressure the buyer by the performance of a small portion of the contract within the first three days . . . . It would be grossly inequitable to interpret the statute to mean that Seller gets no compensation even though Buyer has the benefit of several thousand dollars' worth of home improvements." (*Ibid.*)

The facts in the case before us are clearly distinguishable from those in *Beley.* Here, Luskin began work on replacing the pipe the day after the contract was signed, a Saturday, even though there was no emergency and Dr. Samovitz was emphatic that he wanted to obtain additional estimates and that the work was not to begin until and unless he specifically authorized it. Before the three-day cancellation period had expired, Luskin had done substantial work on the project—tearing up approximately 70 feet of the Samovitz' cement driveway and excavating it to a substantial depth. This attempt to pressure the Samovitz' by part performance within the three-day cancellation period was precisely the conduct section 1689.11 was intended to prevent.

---

[5]Section 1689.11 provides in relevant part: "(a) Except as provided in subdivision (c) of Section 1689.10, within 20 days after a home solicitation contract or offer has been canceled, the buyer, upon demand, must tender to the seller any goods delivered by the seller pursuant to the sale or offer, but he is not obligated to tender at any place other than his own address. If the seller fails to demand possession of goods within 20 days after cancellation, the goods become the property of the buyer without obligation to pay for them. . . .

"(c) If the seller has performed any services pursuant to a home solicitation contract or offer prior to its cancellation, the seller is entitled to no compensation. If the seller's services result in the alteration of property of the buyer, the seller shall restore the property to substantially as good condition as it was at the time the services were rendered."

C. *The Buyers Did Not Lose the Protection of the Home Solicitation Statute by Failing to Plead Noncompliance as an Affirmative Defense.*\*

. . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.

The petition of plaintiff and appellant for review by the Supreme Court was denied June 27, 1985.

---

\*See footnote, *ante,* page 533.