Norman W. COLE and Judy B.
Cole, Plaintiffs,

v.

J.L. LOVETT D/B/A Capitol Roofing
and Insulation Company, United Com-
panies Mortgage of Mississippi, Inc.,
and James T. Breland, Defendants.

Civ. A. No. J85–1026(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 2, 1987.

Charles H. Ramberg, Jackson, Miss., for plaintiffs.

Robert R. Marshall, Percy S. Stanfield, Jr., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

TOM S. LEE, District Judge. ·

This cause came before the court on the complaint of the plaintiffs, Norman and Judy Cole, alleging violations of the Truth-in-Lending Act and the Mississippi Home Sales Solicitation Act by the defendants, J.L. Lovett, doing business as Capitol Roofing and Insulation Company (Capitol Roofing), and United Companies Mortgage of Mississippi (UCM), and further alleging breach of express and implied warranties by Capitol Roofing. James T. Breland was named as defendant as he is the trustee of a deed of trust, the validity of which is in dispute in this action.[1] At trial, the court heard testimony from witnesses and reviewed exhibits admitted in evidence. Upon review of the evidence adduced at the non-jury trial, the court makes the following findings of fact and conclusions of law.

On Tuesday, November 9, 1982, at approximately six o'clock p.m., plaintiffs Norman and Judy Cole were visited by two representatives of Capitol Roofing, Tony Stepp and Ken Smith. After describing the siding proposed to be sold to the Coles and installed on their home, Stepp estimated the cost of covering the Cole home at $4900. This sales call resulted in plaintiffs', on the same evening, signing a contract for the installation of vinyl siding on their home. During this transaction, Stepp presented a number of documents to the Coles for their signatures, including a work order contract, home improvement retail installment contract security agreement and disclosure statement (disclosure statement), loan application, notice of right to cancel, and deed of trust. Although all of the documents were signed by plaintiffs, they both testified that the only document they actually saw was the work order contract. Stepp had represented to them that the papers they were signing included a work order, credit application and insurance papers. According to the Coles, the papers were arranged one on top of the other, with the contract being the top paper. As Stepp presented the papers for their signature, he lifted only so much of a document as was necessary to obtain their signatures at the bottom of each page. When the transaction was completed, the Coles were given a single carbon copy of the work order contract and a copy of the disclosure statement. According to the Coles' testimony, which the court credits, they received no copies of the remaining documents.

Shortly after Stepp and Smith left the home, plaintiffs discussed the matter and decided to hold off on the transaction with Capitol Roofing. They wished to obtain more estimates and have time to decide if they really wanted the siding. Early the next morning, Judy Cole called Capitol Roofing and informed Stepp that she and her husband had decided to wait, to which Stepp replied that the papers had been processed, the workers would be out at the end of the week, and there was nothing he could do.[2]

Frustrated and not knowing what else to do, Mrs. Cole accepted Stepp's explanation. Upon returning home from work that day, she discovered the Capitol Roofing installation crew putting siding on the home. She did not tell them to leave because she believed that she and her husband were bound since they had signed the contract.

---

1. The only relief sought against Breland is his cancellation of the deed of trust. Thus, the use of the term "defendants" in this opinion refers only to Capitol Roofing and UCM. ·

2. Stepp, at trial, admitted having received a phone call from Judy Cole early on the morning following the consummation of the transaction, but claimed that she had called him to discuss the color of the siding to be applied. Stepp's explanation of the call was inconsistent with an earlier version related by J.L. Lovett on the telephone to Charles Ramberg, attorney for plaintiffs. Lovett told Ramberg that Mrs. Cole had called on November 10 to demand that the work begin immediately. This discrepancy leads the court to credit the testimony of Judy Cole regarding her conversation with Stepp on November 10.

Subsequently, on November 27, after the job was completed, plaintiffs signed a completion certificate acknowledging their satisfaction with the work which had been done. Immediately upon completion of the paperwork, including the completion certificate, Capitol Roofing assigned the contract to defendant UCM.[3] At trial, there was testimony from two UCM employees, John Nowell and Marvin Murray, regarding UCM's normal procedure for handling the purchase of a retail installment contract from Capitol Roofing. According to their testimony, once an application for a potential customer was approved, Capitol Roofing would furnish UCM with the disclosure statement and notice of right to rescind. The UCM employees would communicate with the customer to verify that the customer had received the required forms, and that they understood the terms and knew with whom they were dealing. Although it was established at trial that this was UCM's normal procedure, the Coles firmly denied having been contacted by anyone from UCM and the court so finds.

Despite continuing problems with the siding and repeated unsuccessful calls by Judy Cole to Capitol Roofing requesting that the problems be remedied, plaintiffs made monthly payments to UCM. However, after having made eleven payments, the Coles became totally frustrated and discontinued further payment. They subsequently retained counsel who, by letter dated December 19, 1984, informed both J.L. Lovett and UCM that the Coles desired to exercise their right of rescission under the Truth-In-Lending Act (TILA), 15 U.S.C. §§ 1601–1693 (1982), and their right of cancellation pursuant to the Mississippi Home Sales Solicitation Act (MHSSA), Miss. Code Ann. §§ 75-66-1—11 (Supp. 1986). Upon receiving no response from defendants, plaintiffs instituted this action on November 7, 1985, seeking to enforce their right of rescission and alleging breach

of express and implied warranties by defendants. UCM counterclaimed alleging the Coles' default under the contract.

### TRUTH–IN–LENDING ACT

■ The TILA and its implementing Regulation Z require that prior to the consummation of a consumer credit sale, the creditor make certain disclosures to the obligor and give the obligor notice of his right to rescind the transaction. The consumer has until midnight of the third business day following consummation of the transaction or delivery of notice of the right to rescind, or delivery of all material disclosures, whichever occurs last, to rescind the transaction. 12 C.F.R. § 226.23(a)(3) (1986). If the required notice or material disclosures are not delivered, the right to rescission extends for three years following consummation of the transaction. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).

The first violation which plaintiffs contend entitles them to rescind the transaction under TILA is the failure of Capitol Roofing to disclose the security interest that was being acquired in their home. Under TILA, the right to rescind is available in any "credit transaction in which a security interest is or will be retained or acquired in the consumer's principal dwelling." 12 C.F.R. § 226.23(a)(1). The testimony of the parties regarding the deed of trust signed by the Coles was in direct contradiction. Stepp testified that he explained to the Coles that they were granting a security interest in their home, and further said that either he or Smith completed the relevant portions of the deed of trust, with the exception of the property description, before the Coles signed the document. Judy Cole, he claimed, had been unable to find the legal description of the property and, consequently, the description was later inserted after a title search had been completed. According to

3. United Companies Mortgage, as Capitol Roofing's assignee, became subject to all of the Coles' claims and defenses against Capitol Roofing by virtue of a provision in the contract that, "[a]ny holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or servic-

es obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." This provision was contained in the contract pursuant to the Federal Trade Commission Holder in Due Course Rule, 16 C.F.R. § 433.2 (1986).

Stepp, both of the Coles knew they were granting a second mortgage on their home. Plaintiffs, on the other hand, testified that neither Smith nor Stepp informed them that their home would be security for the siding contract. Neither of them recalled having signed a deed of trust. The disclosure statement signed by the Coles did not mention a deed of trust but contained the following language:

Security: Buyers are giving a security interest in:

___ the goods or property being purchased.

_X_ land located at *P.O. Box D'Lo, MS.*

12 C.F.R. § 226.18(m) requires the creditor to disclose "the fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type." In *Williamson v. Lafferty,* 698 F.2d 767 (5th Cir.1983), the plaintiff entered into a credit transaction with the creditor defendant. The plaintiff signed a number of documents, including a disclosure statement and a completely blank deed of trust. The disclosure form stated, in fine print, that buyer granted seller "a deed of trust and security interest in the property where improvements will be located." Recognizing that "the granting of a deed of trust in one's home is a critical factor in a consumer credit transaction," the Fifth Circuit concluded that the disclosure statement did not sufficiently describe the property. 698 F.2d at 769. The court distinguished its previous holding in *Jones v. Fitch,* 665 F.2d 586 (5th Cir.1982), that the creditor's failure to identify the property secured by a deed of trust was not a material non-disclosure, since the deed of trust in *Jones* was executed as part of a single transaction and there was no suggestion that the consumers did not know that a security interest was being taken in their home. In *Williamson,* unlike *Jones,* there was nothing in the transaction to put the consumer on notice that a security interest was being acquired in her home. The debtor was entitled to rescission, as the violations of TILA were "substantial" and "defied the purposes of TILA." 698 F.2d at 770. Similarly, in *Smith v. Capital*

*Roofing Co. of Jackson, Inc.,* 622 F.Supp. 191 (S.D.Miss.1985), the consumers testified that they had not executed the deed of trust on their home as collateral for a siding transaction, that they were unaware of the existence of a deed of trust against their home until notified of foreclosure proceedings by defendant, and that it was not their understanding that the creditor was to receive a security interest in their home, although the disclosure statement signed by the consumers did recite that they were giving a security interest in "1006 Rhondo Street, Jackson, Mississippi 39213." The court concluded that the creditor's failure to disclose the existence of a deed of trust as security on the consumers' home was a material non-disclosure giving rise to a right to rescind. 622 F.Supp. at 195. Likewise, in the instant case, both Norman and Judy Cole denied any knowledge of the existence of a deed of trust against their home and stated affirmatively that they did not learn of the deed of trust until approximately a year later when they applied for credit to make interior improvements on their home and the deed of trust was discovered in the land records. While the Coles did not deny having signed the deed of trust, they insisted that they never saw the deed of trust, as Stepp had them sign the bottom of the page without showing the remainder of the document. Both plaintiffs testified that they were never furnished with a copy of the deed of trust, and Norman Cole said that had he known he was granting Capitol Roofing a security interest in his home, he would never have entered into the transaction. The court credits the testimony of the Coles and is of the opinion that Capitol Roofing did not disclose to them the fact that a security interest was being acquired in their home. Therefore, under the rationale of *Williamson,* this constituted a material violation of TILA and Regulation Z, 15 U.S.C. § 1635(a), 12 C.F.R. §§ 226.18(m), 226.-23(a)(1) and (3), and plaintiffs are entitled to rescind.

 The plaintiffs next charge that Capitol Roofing failed to furnish them with notice of their right to rescind as required

by TILA. TILA and Regulation Z expressly require the creditor in a consumer credit transaction, in which a security interest is being conveyed in the property used by the consumers as their principal dwelling, to provide each consumer who own an interest in the property two copies of a notice of the right to rescind. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a) and (b).[4] At trial, Stepp testified that he verbally informed the Coles of their right to rescind the transaction and gave them each two copies of a notice of right to cancel form which contained the required information. Capitol Roofing introduced a document entitled "notice of right to cancel" with an acknowledgement of receipt of form signed by both plaintiffs and dated November 9, 1982. However, the Coles claimed that they had never seen the notice of right to cancel and that, despite their having signed the acknowledgement portion of the document, neither of them ever received copies of the notice form. Moreover, both testified that Stepp never explained the right of rescission and, in fact, after her discussion with Stepp on November 10, Judy Cole was under the impression that she and her husband were bound by having signed the contract. The effect of the Coles' signatures on the acknowledgment is governed by 15 U.S.C. § 1635(c) which provides that a written acknowledgement of receipt of disclosures by a TILA creditor "does no more than create a rebuttable presumption of delivery thereof." As it appears from the testimony that the Coles were unaware of any right of rescission and did not learn of their right until much later upon consulting with an attorney, the court is of the opinion that the Coles have effectively rebutted the presumption of delivery. The court finds that plaintiffs were not informed of their right to rescind and that,

notwithstanding their signing an acknowledgement of receipt of forms, they never received copies of the notice. The failure by Capitol Roofing to provide each of the plaintiffs with the required notice constituted a violation of TILA and entitled them to rescind the transaction. 15 U.S.C. § 1635(a); 12 C.F.R. §§ 226.17(d) and 226.23(a)(3). As they were never given proper notice of their right to rescind, they timely exercised this right, having notified defendants of their rescission within three years following consummation of the transaction. *See* 15 U.S.C. § 1635(f).[5]

■ Finally, plaintiffs allege that the carbon copy of the disclosure statement which was given them was almost totally illegible, the result being that there was no conspicuous disclosure of the amount financed, the finance charge, the total of payments, the annual percentage rate, the number and amount of payments, and when those payments were due, nor of the property given as security for the debt. 15 U.S.C. § 1602(u) specifically defines the aforementioned items of information as "material" for the purpose of consumers' invoking their rights of rescission. Moreover, the Act and Regulation require that all disclosures be made in a clear and conspicuous fashion. 15 U.S.C. § 1632(a), (b); 12 C.F.R. § 226.17(a). Stepp testified that Capitol Roofing used a four-copy form set of the disclosure statement, with the customer receiving only a single carbon copy. The original and two copies were retained by Capitol Roofing. The original was introduced at trial and was clear and legible and contained the material disclosures. However, also introduced at trial was the copy received by the Coles on which the writing was dim in places and, in other places, impossible to read. Judy Cole con-

---

**4.** The notice is required to be on a separate document and conspicuously disclose the retention or acquisition of the security interest in the consumer's principal dwelling and the consumer's right to rescind the transaction, give an explanation of how the right to rescind may be exercised together with a form for that purpose, explain the effects of rescission, and include the date the rescission period expires. 12 C.F.R. § 226.23(b).

**5.** While TILA provides for the assessment of civil penalty damages against creditors for noncompliance with the Act, an action to recover such damages must be brought within one year from the date of the violation. 15 U.S.C. § 1640(a) and (c). Because the Coles did not file their lawsuit until more than one year following the consummation of their transaction, no penalty damages lie under the Act.

ceded that the writing had "faded" since the transaction, and she was not clear on whether it was legible when they received the copy. Viewing the testimony as a whole, the court is unable to find that Capitol Roofing failed to make the required disclosures in a clear and conspicuous manner, and therefore concludes that plaintiffs have not established that Capitol Roofing committed a material violation of TILA in that regard.

■ In defense of plaintiffs' allegations of TILA violations, defendants contend that if any violations did occur, they were unintentional and resulted from a bona fide or clerical error and that, consequently, under 15 U.S.C. § 1640(c), no liability may be imposed upon defendants. The violations which this court has found cannot accurately be termed clerical errors so as to excuse the violations. *See Jumbo v. Nester Motors, Inc.,* 428 F.Supp. 1085, 1086 (D.Ariz.1977) (failure of seller to furnish copy of security agreement not kind of clerical error exempted from liability under TILA); *In Re Sherman,* 13 B.R. 259, 262 (Bankr.R.I.1981) (inadequate description of security interest taken by creditor is not type of clerical error intended to be included within bona fide error defense of TILA).

■ As a result of Capitol Roofing's violations of TILA, plaintiffs were entitled to rescind the transaction. After the Coles served notice on defendants of their election to cancel the transaction, defendants were required to "return to the [Coles] any money or property given as earnest money, down payment, or otherwise, and [were required to] take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b); 12 C.F.

R. § 226.23(d)(2). Plaintiffs' attempt at cancellation was met with total inaction by defendants. Consequently, the Coles are entitled to the cancellation of the finance charges in their transaction, and to have the security interest in their home voided. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(1) and (2).[6]

## MISSISSIPPI HOME SOLICITATION SALES ACT

In addition to their TILA claims, plaintiffs have alleged violations of the MHSSA.[7] Like TILA, the MHSSA imposes notice and disclosure requirements upon a seller in a transaction which is a "home solicitation sale." A home solicitation sale is defined as "a consumer credit sale of goods or services in which the seller ... engages in a personal solicitation of the sale at a residence of the buyer and the buyer's agreement or offer to purchase is there given to the seller...." Miss. Code Ann. § 75–66–1. This section excludes from coverage sales which are initiated by the buyer.

■ In the present case, there was substantial disagreement between the parties as to the manner in which the initial contact between Capitol Roofing and the Coles occurred. Stepp testified that in November 1982 Capitol Roofing had installed siding on the home of Wanda Collins, a neighbor of the Coles. He claimed that while the crew was working at the Collins home, Judy Cole approached a member of the installation crew and, as a result of a conversation between them, the applicator told Ken Smith to see if the Coles wanted siding. According to Stepp's version, the sales call was at the instance of Judy Cole.[8]

---

**6.** Upon exercise of the right to rescind, any security interest given by the obligor becomes void, "including any such interest arising by operation of law." 15 U.S.C. § 1635(b). Thus, any lien arising under Mississippi law in favor of Capitol Roofing for the work done on the Coles' home is rendered void by their rescission of the transaction.

**7.** The court finds that it has jurisdiction over plaintiffs' pendent Mississippi Home Solicitation Sales Act claim under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130,

16 L.Ed.2d 218 (1966), as the violations of TILA and MHSSA "derive from a common nucleus of operative fact."

**8.** The person with whom Judy Cole was alleged to have had this conversation was David Bridges, the individual in charge of the installation crew. Bridges was listed as a "will call" witness by Capitol Roofing but was not presented at trial and hence did not testify concerning the fact of or substance of this alleged conversation.

The Coles' testimony that their first contact with anyone from Capitol Roofing occurred when Smith and Stepp came to their home on November 9 was corroborated by Wanda Collins, who explained that she had suggested to Stepp that Judy Cole might be interested in purchasing siding. Mrs. Cole had commented on the improved appearance of the Collins home after the siding was applied, and Stepp promised Wanda Collins a $100 commission on any referrals by her which resulted in sales. The court finds that the sales call by Stepp and Smith was the result of a referral by Wanda Collins and was not at the Coles' request. Consequently, this transaction constituted a "home solicitation sale" within the meaning of MHSSA.

■ Section 75–66–3 of MHSSA provides the buyer a right to cancel a home solicitation sale until midnight of the third business day following the day on which the buyer signs an agreement or offer to purchase. With limited exceptions, none of which are applicable here, the seller is required to obtain the buyer's signature on a statement, executed simultaneously with the agreement to purchase, which must conspicuously inform the buyer of his rights under the Act.[9] Until the seller has complied with the notice provisions of the Act, the buyer may cancel the home solicitation sale by notifying the seller "in any manner and by any means of his intention to cancel." Miss.Code Ann. § 75–66–5(4). Defendants did not suggest that they provided the Coles with the notice required by MHSSA. Rather, their sole defense to plaintiffs' MHSSA claim was that the transaction was not a home solicitation sale and compliance was therefore unnecessary.[10] As the court has concluded that the transaction constituted a home solicitation sale, and as Capitol Roofing never informed the Coles of their right to cancel under the Mississippi Act, the Coles properly and timely exercised their right to cancel by letter from their attorney to defendants dated December 19, 1984.

■ The obligations of the parties to a home solicitation sale upon cancellation are set forth in part at Miss. Code Ann. § 75–66–7(1) which requires the seller, within ten days of cancellation of a home solicitation sale, to tender to the buyer "any payments made by the buyer and any note or other evidence of indebtedness." If the seller complies with this obligation, he is allowed to retain a cancellation fee of

---

9. Specifically, section 75–66–5 provides in pertinent part that:

 (2) The statement must:

 (a) appear under the conspicuous caption: "BUYER'S RIGHT TO CANCEL," and

 (b) read as follows: "If this agreement was solicited at your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller by certified or registered mail. The notice must say that you do not want the goods or services and must be mailed before midnight on the third business day after you sign this agreement. The notice must be mailed to: _____ (insert name and mailing address of seller). If you cancel, the seller may keep all or part of your cash down payment, but in no event may the seller retain an amount in excess of five percent (5%) of the cash price or the amount of the cash down payment whichever is the lesser."

 (3) A home solicitation sales contract which contains the notice of cancellation in the form and content required by rule or regulation of the Federal Trade Commission shall comply with the requirements of this section if it contains information to the consumer concerning his right to cancel at least equal to that required by subparagraph (2).

See 16 C.F.R. § 429 (1986), Federal Trade Commission Regulation on Cooling Off Period for Door-to-Door Sales (content required by FTC regulation).

10. At trial, defendants also took the position that they were not required to comply with the disclosure requirements of MHSSA since the state statute conflicts with TILA and Regulation Z. This assertion is predicated upon 15 U.S.C. § 1632(b) and 1638(b)(1), implemented at 12 C.F.R. § 226.28(a)(1), which provides that state law disclosure requirements that are inconsistent with the requirements under TILA are preempted to the extent of the inconsistency. "A state law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the federal law." Id. Defendants did not explain or identify which requirements of MHSSA that they contend are inconsistent with the disclosure requirements of TILA. The court has compared the requirements of these statutes and concludes that, while MHSSA requires additional disclosures, it does not require inconsistent disclosures. Thus, defendants' argument is without merit.

five percent of the cash price, not to exceed any cash down payment. Miss. Code Ann. § 75–66–7(3). Until the seller complies, "the buyer may retain possession of the goods delivered to him by the seller or has a lien on the goods in his possession or control for any recovery to which he is entitled." Miss. Code Ann. § 75–66–7(4). Section 75–66–9 provides in pertinent part that

(1) Except as provided in section 75–66–7, within a reasonable time after a home solicitation sale has been cancelled or an offer to purchase revoked, the buyer upon demand must tender to the seller any goods delivered by the seller pursuant to the sale.... *If the seller fails to demand possession of goods within a reasonable time after cancellation or revocation, the goods become the property of the buyer without obligation to pay for them.* For the purpose of this section, forty (40) days is presumed to be a reasonable time. (emphasis supplied)

. . . . .

(3) If the seller has performed any services pursuant to a home solicitation sale prior to its cancellation, the seller is entitled to no compensation except the cancellation fee provided in this chapter.

Although MHSSA was enacted in 1974, there has been no construction of the provisions relating to the various rights and obligations of the buyer and seller upon cancellation. Under TILA, as construed by the Fifth Circuit, a creditor forfeits any interest in the property delivered an obligor if the obligor tenders the property or its reasonable value and the seller fails to take possession of the property within twenty days of tender. In order for the forfeiture provision to apply, the obligor must make tender, irrespective of any actions on the part of the creditor. *See Gerasta v. Hibernia,* 575 F.2d 580 (5th Cir.1978). Under the clear wording of MHSSA, however, if within a reasonable time of cancellation, the seller fails to demand a return of the property from the buyer, the property becomes that of the buyer, and the buyer is no longer obligated to pay for it. In addition, the buyer is entitled to a return of all sums paid and cancellation of any security interest granted to the seller. In the present case, neither Capitol Roofing nor UCM demanded a return of the property from plaintiffs within a reasonable time or at any time. Hence, as a result of defendants' noncompliance with the requirements of MHSSA, they are required to cancel the deed of trust and to return to plaintiffs payments made in the amount of $1703.57. The Coles are also entitled to cancellation of the underlying contract. Finally, as a result of Capitol Roofing's failure to demand possession of the siding within a reasonable time after cancellation, the siding became the property of the Coles and they are relieved of any further obligation to pay for it.

■ While the transaction that included installation of the siding on the home of the Coles was a sale of services, as well as a sale of goods, a seller who has performed services pursuant to a home solicitation sale prior to its cancellation is entitled to no compensation except the five percent cancellation fee provided by Miss. Code Ann. § 75–66–7(3). The cancellation fee is not available if the seller fails to comply with his duties upon cancellation, or if the buyer voids the sale on any ground independent of his right to cancel. Miss. Code Ann. § 75–66–7(3). In this case, Capitol Roofing failed to comply with the requirement in section 75–66–7(1) to tender to the buyer payments made and the evidence of indebtedness within ten days after cancellation of the sale. Thus, Capitol Roofing is not entitled to any cancellation fee.

■ Defendants have urged that the court condition rescission or cancellation upon the Coles' payment to defendants of the reasonable value of the siding. The defendants could have avoided what may seem like a harsh result in the first instance, if they had complied with the clear requirements of MHSSA. At the time of the transaction with the Coles, the defendants wholly failed to inform the Coles of their rights, thus leaving them vulnerable to subsequent actions by Capitol Roofing. Then, Capitol Roofing, despite Judy Coles' request to hold off on the siding, began

work immediately, before the expiration of the three-day cancellation period, thus placing the Coles in a position of accepting goods and services they were not certain they wanted. Capitol Roofing attempted to deprive plaintiffs of their right to rescind, first, by failing to inform them of the right and, secondly, by subtly forcing them to accept the siding. For those reasons, the court concludes that, although rescission is an equitable remedy and conditions may be placed on the exercise of that right, the equity in this case does not lie with the defendants. As one court has observed,

> If this result appears to deal harshly with merchants who have fully performed under their contracts, it seems clear to this court that the message which the legislature has attempted to convey by the enactment of [The California Solicitation Sale Act] is "Caveat Vendor". Merchants, put on notice by the statute, can easily and inexpensively protect themselves, ..., by including a right to cancel provision and an accompanying notice of cancellation as a matter of course in all contracts signed outside their trade premises.

*Weatherall Aluminum Products Company v. Scott,* 71 Cal.App.3d 245, 249, 139 Cal.Rptr. 329, 331 (1977); *see also Louis Luskin and Sons, Inc. v. Samovitz,* 166 Cal.App.3d 533, 539, 212 Cal.Rptr. 612, 615 (1985) (attempt to pressure buyers by part performance within three-day cancellation period was precisely conduct home solicitation sales act was intended to prevent).

As the court has concluded that plaintiffs have established violations of both TILA and MHSSA, and that under MHSSA the Coles have no obligation to pay for the siding on their home, this court need not consider the breach of warranty claims alleged by plaintiffs. Further, plaintiffs are entitled to cancellation of the transaction under both MHSSA and TILA, and UCM is entitled to no relief on its counterclaim for damages as a result of plaintiffs' default on the underlying contract. Defendants are also required, pursuant to Miss. Code Ann. § 75-66-7(3), to return to the Coles the sum of $1703.57, representing the total of payments made by the Coles.

The court directs counsel to meet and confer for the purpose of exploring the possibilities of reaching agreement on a reasonable attorney's fee. If counsel cannot within fifteen days of the date of entry of this memorandum reach agreement on the attorney's fee, counsel for the plaintiffs is directed to submit a statement of costs and time spent preparing this case and the court, after giving defendant an opportunity to be heard, will award costs and a reasonable attorney's fee in such amounts as it deems proper.

A separate judgment shall be submitted by the parties in accordance with this opinion.