**In re Virginia L. SAMSA and Richard A. Samsa, Debtors.**

**Bankruptcy No. 87–398.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 27, 1988.

---

Daniel L. Haller, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for debtors.

Louis P. Vitti, Louis P. Vitti and Associates, P.C., Pittsburgh, Pa., for Federal Nat. Mtg. Assoc.

Gary J. Gaertner, Pittsburgh, Pa., Trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This matter comes before the court by the debtors' objection to Secured Claim of Federal National Mortgage Association ("FNMA"). The debtors assert that FNMA's claim of $9,625.14 should be reduced because of violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* The debtors further assert that the claim of FNMA includes attorney's fees in excess of those provided for in the underlying mortgage. The court grants the debtors' objection to FNMA's claim.

On September 19, 1969, Richard A. Samsa executed a mortgage with Advance Mortgage Corporation ("Advance"), FNMA's predecessor in interest. The mortgage encumbers the debtors' residence, located at 1604 Wolfe Avenue, North Braddock, Allegheny County, Pennsylvania 15104. Shortly after executing the mortgage, Richard Samsa conveyed title to the property to himself and his wife.

Thereafter, the debtor became unemployed. The mortgage has been delinquent since July 1985. FNMA filed a Complaint in Mortgage Foreclosure in the Court of Common Pleas of Allegheny County in February 1986. Richard Samsa did not answer the Complaint. On March 13, 1986, a default judgment in the amount of $7,894.29 was entered against him. Virginia Samsa filed a timely Answer, New Matter, and Counterclaim, raising, inter alia, the right to recoupment because of alleged violations of the Truth in Lending Act and the correlative federal regulations, 12 C.F.R. § 226, commonly known as Regulation Z. The debtors filed for relief under chapter 13 on January 17, 1987.

## I. THE ALLEGED TRUTH IN LENDING VIOLATIONS

In their Objection to Secured Claim, the debtors assert several violations of the Truth in Lending Act. The debtors seek to use the alleged Truth in Lending violations as a defense by recoupment to FNMA's claim. As their only defense, FNMA contends that the debtors' attempt to recover for violations of the Truth in Lending Act is untimely. The Truth in Lending Act contains a provision limiting actions:

Any action under this section may be brought ... within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation in an action to collect a debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e) (1982). FNMA attempts to characterize the instant proceeding as a mortgage foreclosure action. FNMA strenuously argues that a mortgage foreclosure action is not an action to collect a debt, as that term is used in the Truth in Lending Act, and thus the debtors' allegations of violations of the Truth in Lending Act are untimely. In support of its position, FNMA relies on a recent decision of the Pennsylvania Superior Court, *New York Guardian Mortgage Corp. v. Dietzel*, 362 Pa.Super. 426, 524 A.2d 951 (1987). The debtors vigorously argue that FNMA's claim in bankruptcy is an action to collect a debt, and a fortiori, their attempted recoupment is viable.

■ Both the debtors' and FNMA's arguments miss the mark. The Truth in Lending Act was amended in 1980. The version of 15 U.S.C. § 1640(e) quoted above, over which the parties in this action dispute, was one of the 1980 amendments. However, the 1980 amendments did not become effective until October 1, 1982. Therefore, 15 U.S.C. § 1640(e), as quoted above, is inapplicable to the case at bar. The court must consider the law which was applicable at the time of the transaction.

*Hanna v. Lomas and Nettleton Co. (In re Hanna)*, 31 B.R. 424 (Bankr.E.D.Pa.1983). In that case, the court applied 15 U.S.C. § 1640(e) (1970), the pre–1982 version, because the transaction from which the Truth in Lending violations arose occurred before the effective date of the 1982 amendments.

■ The pre–1982 version of 15 U.S.C. § 1640(e) states "[a]ny action under this section may be brought ... within one year from the occurrence of the violation." Recoupment is not mentioned. In *In re Hanna*, 31 B.R. 425, Bankruptcy Judge Goldhaber allowed the defensive use of 15 U.S. C. § 1640(e) in factual settings substantially similar to the instant case. There, the debtor responded to the creditor's proof of claim by raising Truth in Lending violations as the basis for recoupment. In allowing the debtor to recoup, the court examined Pennsylvania law. In *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689 (1980), a creditor sued the debtor in state court approximately four years after the loan was consummated. The borrower raised recoupment as a defense. The Pennsylvania Supreme Court explained that recoupment is "not a setoff," but is purely defensive in nature, "lessen[ing] or defeat[ing] any recovery by the plaintiff. It goes to the existence of the plaintiff's claim, and is limited to the amount thereof...." 490 Pa. at 219, 415 A.2d at 694. In *In re Hanna*, 31 B.R. at 426, the court interpreted the *Vespaziani* decision as holding that "under both federal and state law ... the counterclaim was properly raised despite the fact that over one year had transpired from the violation in question because the counterclaim sought only recoupment."

This court agrees with the analysis of *In re Hanna*. We hold that under the pre–1982 version of the Truth in Lending Act, the debtors may assert Truth in Lending violations by way of recoupment after the one year limitation has expired. *See also In re Galea'i*, 31 B.R. 629 (Bankr.D.Hawaii 1981).

We now turn to the merits of the alleged Truth in Lending violations. First, the debtors aver that Advance improperly dis-

closed its security interest, in violation of 15 U.S.C. § 1638(a)(10) (1970), *amended by* 15 U.S.C. § 1638(a)(9) (1982). The applicable regulation, 12 C.F.R. § 226.8(b)(5) mandated that the disclosure statement contain the following:

> A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify.... If after-acquired property will be subject to the security interest ... this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

The debtors complain that the disclosure statement did not clearly identify the after-acquired property in which Advance was taking a security interest. The debtors further complain that Advance did not disclose the limitation imposed by state law on obtaining security interests in after-acquired property. The disclosure statement indicates that the lender has a security interest in the debtors' residence, "including after acquired property as described in the mortgage...." The description of the security interest in the mortgage, in addition to the land and building, includes "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises...."

■ Section 9–204(4)(b) of the Uniform Commercial Code, as it existed in Pennsylvania at the time of the transaction, limited security interests in after-acquired consumer goods: "No security interest attaches under an after-acquired property clause ... (2) to consumer goods other than accessions (section 9314) when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value." 12A P.S. § 9–204(4)(b) (Purdon 1970), *repealed and*

*superseded by* 13 Pa.Cons.Stat.Ann. § 9101, *et seq.* (Purdon 1984). Simply stated, Advance could not obtain a security interest in "any and all appliances, machinery, furniture and equipment," which were not accessions, unless the debtors obtained them within ten days after the mortgage transaction. This limitation was not revealed in the disclosure statement. In violation of 12 C.F.R. § 226.8(b)(5), the disclosure statement did not clearly identify the property in which Advance held a security interest. Moreover, numerous courts have held that disclosure of an after-acquired property clause, without further explanation of the ten day limitation on after-acquired consumer goods, violates 12 C.F.R. § 226.8(b)(5). *Pollack v. General Finance Corp.*, 535 F.2d 295 (5th Cir.1976), *aff'd on rehearing*, 552 F.2d 1142 (5th Cir.1977), *cert. denied* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977); *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir.1976); *Reid v. Liberty Consumer Discount Co. of Pennsylvania*, 484 F.Supp. 435 (E.D.Pa.1980); *Bartlett v. Commercial Federal Savings and Loan Association of Omaha*, 433 F.Supp. 284 (D.Neb.1977); *see also Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927 (3d Cir.1982), *vacated*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), *appeal dismissed*, 699 F.2d 642 (1983).

As damages, the debtors are entitled to "twice the amount of the finance charge in connection with the transaction," plus costs and attorney's fees. 15 U.S.C. § 1640(a) (1970). The debtors also allege deficiencies in the disclosure statement with respect to the use of the term "finance charge." 12 C.F.R. § 226.6. However, the debtors' recovery is statutorily limited to $1,000, no matter how many violations may have occurred. 15 U.S.C. § 1640(a). Since the finance charges exceeded $1,000, the debtors' recovery is so limited. Therefore, we need not consider the other alleged violations. FNMA's claim against the debtors is reduced by $1,000, plus costs and attorney's fees which will be determined at a later date.

## II. CONTRACTUAL ATTORNEY'S FEES

■ The debtors also dispute the attorney's fees claimed by FNMA. FNMA seeks allowance of the attorney's fees and costs it actually incurred as a result of the mortgage default and bankruptcy proceedings. The mortgage provides for an attorney's commission of 5% of the principal due, plus costs. Five percent of the amount due, $7,894.29, is $394.72. FNMA's actual fees were $1,625 and its costs were $394.50. FNMA contends that equitable principles entitle it to its actual legal fees, and that it should not be limited to 5% as specified in the mortgage. In support of its position, FNMA cites *Foulke v. Hatfield Fairgrounds Bazaar, Inc.,* 196 Pa.Super. 155, 173 A.2d 703 (1961). FNMA's reliance on that case is misplaced. *Foulke v. Hatfield* stands for the proposition that the court, in its discretion, may award an attorney's commission in the amount stipulated in the contract, even if that amount exceeds the actual amount of the attorney's services. FNMA has not provided, nor is this court aware of, any authority for awarding attorney's fees in excess of the contract amount.

Bankruptcy case law does not support the view of FNMA. Contractual terms providing creditors with attorney's fees must be strictly construed. *In re United Nesco Container Corp.,* 68 B.R. 970, 974 (Bankr.E.D.Pa.1987). FNMA is entitled to attorney's fees of $394.72 plus costs; its claim is further reduced by $1,230.28.

An appropriate order will issue.