**In re Raymond WOOLAGHAN and Mary Ann Woolaghan, Debtors.**

**Raymond WOOLAGHAN and Mary Ann Woolaghan, Plaintiffs,**

**v.**

**UNITED MORTGAGE SERVICES, INC., Defendant.**

**Bankruptcy No. 90–3780 JLC.
Motion No. 91–5467M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 22, 1992.

Daniel L. Haller, Neighborhood Legal Services, Pittsburgh, Pa., for debtors.

Susan M. McMarlin, Davis Reilly, P.C., Pittsburgh, Pa., for United Mortg. Services, Inc.

Gary J. Gaertner, Pittsburgh, Pa., Trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The matter before the court concerns an objection filed by Raymond and Mary Ann Woolaghan against United Mortgage Services, Inc., and their motion for summary judgment. For the reasons stated below, the motion for summary judgment is denied and judgment is in favor of United Mortgage Services, Inc. for the full amount of its secured claim consistent with this Memorandum Opinion.

## I. FACTS

On or about April 30, 1979, Raymond and Mary Ann Woolaghan (hereinafter "Debtors") entered into a consumer credit transaction whereby they borrowed money from Homemakers Loan and Consumer Discount Company d/b/a G.E.C.C. Consumer Discount Company ("G.E.C.C."), the predecessor of United Mortgage Services, Inc. (hereinafter "UMS" or "Claimant"). As security for the nonsale loan, the Debtors granted G.E.C.C. a mortgage on their residence located at 3711 Trautman Street, Munhall, Pennsylvania, in addition to a security interest in their personal property.

The Debtors defaulted on their loan after Mr. Woolaghan lost his job in the steel industry. Mr. Woolaghan subsequently found work which enabled the Debtors to file and finance the instant Chapter 13 petition.

After the Debtors' defaulted on their loan, UMS obtained a judgment in mortgage foreclosure in state court. A Sheriff's sale of the mortgaged premises was scheduled to take place on December 3, 1990. The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on November 30, 1990. On February 4, 1991, the 11 U.S.C. § 341 meeting of creditors was held. UMS filed a proof of claim on February 11, 1991, in the amount of $7,186.78. The Chapter 13 Plan was confirmed two (2) days later on February 13, 1991.

On July 26, 1991, the Debtors filed the subject objection to claim, alleging that UMS violated the Federal Reserve Regulation Z, 12 C.F.R. § 226.8(b)(5) (pre–1982 version) (hereinafter "Reg. Z") and the Federal Truth–in–Lending Act, 15 U.S.C. § 1601 et seq. (pre–1982 version) (herein-

after "TILA").[1] On November 8, 1991, the Debtors filed a motion for summary judgment. A hearing was held on November 20, 1991, where it was agreed by the parties that the Debtors' objection to claim and motion for summary judgment would be decided on briefs.

## II. DISCUSSION

### A. *Debtors are not precluded from objecting to a claim after confirmation of the Chapter 13 plan.*

The Debtors object to UMS's claim of $7,186.78 on the grounds that UMS (and its predecessor, G.E.C.C.) violated the TILA and Reg. Z by failing to disclose certain information in the loan documents. The Debtors further allege that because of UMS's failure to disclose such information, the Debtors are entitled to have UMS's claim reduced by way of recoupment.

UMS contends that the Debtors are barred from raising a claim objection because the Chapter 13 plan has been confirmed. Specifically, UMS avers that although Bankruptcy Rule 3007 does not contain a time limitation for filing claim objections, case law suggests that all claim objections should be raised prior to confirmation of the plan. Claimant's Brief at 2 (doc. no. 34). For this proposition, UMS relies on *In re Simmons*, 765 F.2d 547 (CA5 Miss 1985), which held that a secured claim which was not objected to prior to confirmation of a Chapter 13 plan should be allowed.

▇▇▇ Despite the apparent breadth of the holding in *Simmons*, this court does not believe that it is appropriate to fix confirmation as a deadline for claim objections in a Chapter 13 case. The facts in *Simmons* are distinguishable, for they involved a misclassified claim in the plan, and the debtor sought to bind the claimant to treatment inconsistent with a filed proof of claim. This court believes that "when confirmation of a plan does not purport to treat a specific creditor in a way such that

its rights are determined and when determination of allowed claims is not necessary to a determination of whether the plan meets the standards of confirmation, confirmation is not an appropriate deadline for objection" to a claim. 8 *Colliers*, § 3007.03 (15th Ed).

The Third Circuit Court of Appeals addressed this issue in the case of *In re Lewis*, 875 F.2d 53 (CA3 Pa 1989). In *In re Lewis*, the debtor's residence was encumbered by several liens, one of which was held by Philadelphia Neighborhood Housing Services ("PNHS"). The debtor's plan specifically stated in ¶ 8 that confirmation of the plan constituted a finding that PNHS held a claim secured in personal property and real property and that its rights could be modified in accordance with 11 U.S.C. § 1322(b)(2). After the debtor's plan was confirmed, the debtor filed a motion under 11 U.S.C. § 506(a), seeking a determination of the value of PNHS's interests in his residence. *In re Lewis*, 875 F.2d at 55.

The Third Circuit held that the debtor did not waive his rights to object to PNHS's claim under § 506 because ¶ 8 clearly indicated that a § 506 modification of the PNHS claim was contemplated by the plan. The court's conclusions focused on the particular language of ¶ 8 when read together with the other provisions of the plan so as to determine what the debtor actually intended. *In re Lewis*, 875 F.2d at 57. In addition, the court of appeals held that although the claim objection was filed seven (7) months after the debtor's Chapter 13 plan was confirmed, it was not untimely because neither the Bankruptcy Rules nor the Code dictate a time limitation and the objection did not prejudice the claimant in any way. *Id.*

▇▇▇ In the case at bar, the Debtors' confirmed Chapter 13 plan contains a handwritten notation which states:

1. The TILA was amended in 1980, however, the 1980 amendments did not become effective until October 1, 1982. Therefore, the court must consider the law which was applicable at the time of the transaction. *In re Samsa*, 86 B.R. 863 (Bkrtcy.W.D.Pa.1988); *Hanna v. Lomas and Nettleton Co. (In re Hanna)*, 31 B.R. 424 (Bkrtcy. E.D.Pa.1983).

Note: Mgt with United Mgt Services has been reduced to a judgment of $5,882.47. Lender purported to have taken a security interest in Debtors' consumer goods as well. Debtors believe United Mortgage claim is subject to Truth In Lending recoupment.

According to *In re Lewis*, this court must consider this notation which clearly reveals the Debtors' contemplated objection to UMS's claim. Moreover, in regard to the issue of timing, the Debtors' claim objection does not prejudice UMS so as to persuade this court to reject the claim objection as untimely. Therefore, this court finds that the Debtor's objection to UMS's claim was both proper and timely.

B. *Debtors may assert TILA violations in bankruptcy court even though barred from making such assertions in state court.*

■ UMS argues that the Debtors are barred from asserting TILA violations in bankruptcy court because they are barred from asserting the claim in state court. Claimant's Brief at 3 (doc. no. 34). UMS believes that the Debtors are attempting to pursue a defense in bankruptcy court that they would otherwise be precluded from pursuing in state court. In *New York Guardian Mortg. Corp. v. Dietzel*, 362 Pa.Super. 426, 524 A.2d 951 (1987), the court determined that a TILA violation may not be asserted as a counterclaim in a mortgage foreclosure action because such an action is strictly an *in rem* or *quasi in rem* proceeding whose sole purpose is to affect a judicial sale of mortgaged property to collect a debt. In contrast, "a bankruptcy action, unlike a mortgage foreclosure, is inherently an *in personam* proceeding because it resolves the personal obligations of the debtor." *Jones v. Progressive–Home Federal Savings and Loan Assoc.*, 122 B.R. 246, 250 (W.D.Pa.1990) (citations omitted) (district court held that *In re Dietzel* does not bar a TILA claim in a bankruptcy action.) Therefore, the Debtors in this case

are not barred from raising TILA violations in bankruptcy court.

C. *The Debtors are not barred by the doctrine of res judicata.*

■ UMS's argues alternatively that the doctrine of *res judicata* bars the Debtors from recovery in the instant action because the Debtors' did not attempt to raise TILA violations in state court prior to the entry of the judgment in mortgage foreclosure. Claimant's Brief at 3 (doc. no. 34). This argument is without merit. As discussed above, state law prohibits the assertion of such a claim as a defense to a mortgage foreclosure action. *In re Jones*, 122 B.R. 246, 251 n. 4 (W.D.Pa.1990). *See also, Smith v. Wells Fargo Credit Corp.*, 713 F.Supp. 354 (D.Ariz.1989); *In re Marshall*, 121 B.R. 814 (Bkrtcy.C.D.Ill.1990). Consequently, the issues could not be actually litigated and *res judicata* cannot apply. *Miller v. Miller*, 186 A.2d 93, 123 Vt. 221 (1962); *Donnelly v. United Fruit Co.*, 183 A.2d 415, 75 N.J.Super. 383, affirmed 190 A.2d 825, 40 N.J. 61 (1962); *Oravec v. Unemployment Compensation Bd. of Review*, 90 A.2d 269, 171 Pa.Super. 491 (1952).

D. *The Debtors may assert TILA claim as a defense for recoupment.*

Finally and substantively, the court must consider the issue of whether UMS violated TILA disclosure requirements so as to allow the Debtors to recoup $2,000.00.[2] The Debtors' objection to UMS's secured claim of $7,186.78 is based on the allegation that UMS (and its predecessor, G.E.C.C.) violated the TILA and Reg. Z in the following aspects:

a. By failing to reveal in its disclosure statement what after acquired property it was taking a security interest in.

b. By failing to describe and/or clearly identify the property, including personal property in which it was taking a security interest.

c. By failing to describe in the disclosure statement the type of security inter-

2. The Debtors base their argument for money damages on 15 U.S.C. § 1640(a)(2), which permits a $1000 recovery in statutory damages for an individual· action. The Debtors assert that this language grants $1,000 to each debtor, thus $2,000 for a husband and wife.

est it was taking in any after acquired property.

    d. By failing to state in its mortgage or any other security document that it was claiming by virtue of its disclosure statement, a security interest in Debtors' personal property.

Debtors' Objection to Claim, ¶ 4 (doc. no. 25).

    The TILA is a federal statute which regulates the terms and conditions of consumer credit. Its congressionally declared purpose is to assure the informed use of credit through a meaningful disclosure of credit terms so that consumers may more readily compare different financing options and costs. 15 U.S.C. § 1601 (1979); *see* 32 A.L.R. Fed. 863. For loans that fall within its purview, the TILA requires the creditor to issue to the debtor a disclosure statement summarizing certain information found in the loan documents. The information which must be disclosed is explained Reg. Z, § 226.8(b)(5). Upon a creditor's failure to make the necessary disclosures, the TILA provides a debtor with remedies among which is an award of actual damages, attorneys fees and an additional award of up to $1,000. 15 U.S.C. § 1640(a) (1979).[3]

    Actions for TILA violations must be brought within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e) (1979).[4] A violation "occurs" when the transaction is consummated, which happens at the moment "a contractual relationship is created between [a creditor and a consumer]. . . ." *Bourgeois v. Haynes Construction Co.*, 728 F.2d 719, 720 (CA5 LA 1984) (applying 12 CFR § 226.2(kk) as it existed at the time of the contract); *In re Smith*, 737 F.2d 1549 (CA11 Ga 1984); *Moor v. Travelers Insurance Co.*, 784 F.2d 632 (CA5 Miss 1986); *Wachtel v. West*, 476 F.2d 1062 (CA6 Tenn 1973), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114. Nondisclosure has been held not to be a continuing violation for the purposes of the statute of limitations. *Wachtel v. West*, 476 F.2d 1062 (CA6 Tenn 1973), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114; *see, In re Smith*, 737 F.2d at 1552.

    In the case at bar, the subject consumer credit transaction occurred on or about April 30, 1979. Thus, the alleged TILA violation occurred approximately 13 years ago. The Debtors' demand for money damages for UMS's alleged TILA violation is clearly outside the one-year time limitation of § 1640(e) and is therefore barred. *In re Smith*, 737 F.2d at 1552, 1555; e.g., *Jackson v. Columbus Dodge, Inc.*, 676 F.2d 120 (CA5 GA 1982); *Davis v. Federal Deposit Insurance Corp.*, 620 F.2d 489 (CA5 LA 1980); *modified*, 636 F.2d 1115 (1981); *Moor v. Travelers Ins. Co.*, 784 F.2d 632 (CA5 Miss 1986); *Felt v. Federal Land Bank Ass'n*, 760 F.2d 209 (CA8 S.D.1985).[5]

---

**3.** 15 U.S.C. § 1640(a) in pertinent part:

    (a) Except as otherwise provided in this section, any creditor who fails to comply with a requirement imposed under this part . . . with respect to any person is liable to such person in an amount equal to the sum of—

    (1) any actual damage sustained by such person as a result of the failure;

    (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or . . . , except that the liability under this subparagraph shall not be less than $100 not greater than $1,000; . . .

**4.** 15 U.S.C. § 1640(e) (1979):

    (e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

**5.** Some courts have held that this subchapter of the TILA is subject to equitable tolling in cases where fraudulent concealment is alleged. *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037 (CA6 Tenn 1984); *King v. California*, 784 F.2d 910 (CA9 Cal 1986), appeal dismissed, *cert. denied*, 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987), rehearing denied 484 U.S. 971, 108 S.Ct. 474, 98 L.Ed.2d 412 (1987); 36 A.L.R.Fed. 657. In order for the Debtors to successfully argue the equitable tolling doctrine, "[they] must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, [they] were unable to discover that conduct." *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (CA5 Miss 1986) (citations omitted). No reason for equitable tolling exists in the instant case where there was no allegation or evidence of fraudulent concealment of material facts, and where the Debtors had reasonable opportunity to discover the exact nature of their loan.

    Furthermore, for the reasons stated above, this court would not be persuaded by the argu-

■ The Debtors assert that as a result of UMS's alleged TILA violation, they are entitled to recoup $2,000.00 in statutory damages. If a TILA violation is raised as a recoupment defense to a claim, case law has established that the 15 U.S.C. § 1640(e) (1979) time limitation does not apply. In 1982, § 1640(e) was amended to specifically include the defenses of recoupment and setoff.[6]

The United States Supreme Court has held that:

[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

*United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, 1370, 108 L.Ed.2d 548 (1990) (*quoting Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935)); *see also Wells v. Rockefeller*, 728 F.2d 209, 213 (CA3 V.I.1984). Recoupment is the right of a defendant to reduce the plaintiff's claim either because the plaintiff has not complied with the obligations of the contract upon which it sues or because the plaintiff has violated a legal duty in the formation or performance of the contract. *In re Jones*, 122 B.R. 246, at 248 (citing *In re Smith*, 737 F.2d 1549, 1552 n. 7 (CA11 GA 1984)) (To qualify as recoupment a cause of action must be asserted defensively.); *with Matter of Smith*, 14 B.R. 712, 714 (Bkrtcy.N.D.Ga.1981) (A counterclaim is not in the nature of a recoupment defense, but is a setoff, and is subject to the statute of limitations.).

■ In order to maintain a TILA claim for recoupment, one must show that 1) the TILA violation and the debt are products of the same transaction, 2) the claim is asserted as a defense, and 3) the main action is timely. *In re Smith*, 737 F.2d 1549, at 1553. Debtors cannot avoid the statute of limitations by merely calling the requested statutory damages "recoupment." *Matter of Smith*, 14 B.R. at 714. The statute of limitations cannot be negated by simply changing the label from setoff to recoupment.

■ The first requirement for recoupment (that is the TILA violation and the UMS claim arise from the same transaction) is a fact that is not disputed by the parties. This court believes that because the consumer loan and the TILA damages are a result of a single loan transaction in which both UMS and the Debtors were a prty, the debts are fundamentally "products" of the same transaction.[7]

■ The second requirement of recoupment is that the TILA claim must be brought as a defense. In the case of *In re Samsa*, 86 B.R. 863 (Bkrtcy.W.D.Pa.1988), this court held that debtors may assert TILA violations by way of a recoupment defense after the one-year statute of limitations expired. *Id.* at 865 (citations omitted). In fact, the right of a debtor in bankruptcy to invoke the doctrine of recoupment to reduce a secured proof of claim of a mortgage lender by the amount of statutory TILA damages has been recognized again and again in the case law. *See, e.g., Household Finance Corp. v. Hobbs*, 387 A.2d 198 (Del.Super.1978); *Wood Acceptance Co. v. King*, 18 Ill. App.3d 149, 309 N.E.2d 403 (1974); *Gambale v. Lomas & Nettleton Co.*, 80 B.R. 308 (E.D.Pa.1987); *Werts v. Federal National Mortgage Ass'n*, 48 B.R. 980, 983–84 (E.D.Pa.1985); *In re Bender*, 86 B.R. 809, 816 (Bkrtcy.E.D.Pa.1988); *In re Dangler*, 75 B.R. 931, 935–37 (Bkrtcy.E.D.Pa.1987); *In re Hanna*, 31 B.R. 424, 425–26 (Bkrtcy. E.D.Pa.1983); *In re Galea'i*, 31 B.R. 629 (Bkrtcy.D.Haw.1981). In *Household Con-*

ment that the one-year time limitation should not begin to run until a reasonable person would have been put on notice of the facts constituting the TILA claim.

6. In 1980, Congress decided to codify case law and amended § 1640(e) to specifically authorize the assertion of TILA claims as a defense in either recoupment or setoff more than one year after the occurrence of the TILA violation. Pub.L. 96–221, Title VI, § 615, 94 Stat. 132, 181 (1980).

7. *Contra, Basham v. Finance America Corp.*, 583 F.2d 918, 928 (CA7 Ill.1978) (Court held that a TILA claim is not directed at or an answer to the underlying debt.).

*sumer Discount Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689 (1980), the Supreme Court of Pennsylvania explained the doctrine of recoupment:

> Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim, survives as long as the cause of action upon the claim exists. It is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.

490 Pa. at 219, 415 A.2d at 694 (quoting *Pennsylvania R.R. Co. v. Miller*, 124 F.2d 160 (CA5 TX 1942) cert. denied, 316 U.S. 676, 62 S.Ct. 1047, 86 L.Ed. 1750).

This court must look to the substance of the Debtors' TILA claim and decide whether it is in the nature of a defense. Under the facts of this case, given that the parties are under the jurisdiction of the bankruptcy court, the act of filing a proof of claim is an action to collect a debt. *In re Jones*, 122 B.R. 246, 250 (W.D.Pa.1990) (the district court held that, "[t]he filing of a proof of claim, by its very nature, is an action to collect a debt." (citations omitted)). This court endorses this legal conclusion, however, this court also appreciates the validity of some of the criticism this conclusion has received.[8] It is difficult to give meaning to a statute of limitations when its own application is so limited. In Pennsylvania, foreclosures proceed in state court which does not permit TILA violations to be raised as a defense.[9] In contrast, TILA violations can be raised in bankruptcy court, but only when the debtor is defending a claim filed

against him. The situations that remain are generally those actions brought affirmatively against the lender; cases in which the exceptions of recoupment and setoff do not apply.

The Debtors' TILA claim in this case was filed in response to UMS's proof of claim. Although the Debtors' objection to UMS's claim appears to raise an affirmative counterclaim, the objection to UMS's claim and the raising of the TILA violation are in the nature of a defense within the meaning of the statute, or else the statute has no meaningful purpose. The TILA claim was not asserted as an independent cause of action, but instead as a response to UMS's proof of claim in order to limit the extent of recovery by UMS on its claim. Thus, the Debtors raised the TILA violations as a defense to the proof of claim filed by UMS.

The third and final requirement is that the main action must be timely. In the case at bar, the "main" action is the filing of UMS's proof of claim, since it was this filing which initiated the subject objection. The proof of claim was filed shortly after the Debtors' 11 U.S.C. § 341 meeting of creditors, and thus before the proof of claim bar date. Consequently, this court finds that the main action was timely.

Therefore, because all three elements of recoupment are satisfied, the Debtors may assert a TILA violation against UMS without being barred by the one-year statute of limitations. 15 U.S.C. § 1640(e) (1979).

### E. *UMS did not violate the TILA*

The Debtors allege that there is a discrepancy between the disclosure statement and the security agreement, and that it is this discrepancy that gives rise to a TILA

---

**8.** *Contra, In re Smith*, 737 F.2d 1549 (CA11 GA 1984); *Basham v. Finance America Corp.*, 583 F.2d 918 (CA7 Ill 1978) (Although the debtors in this case were requesting affirmative damages under 15 U.S.C. § 1640(a)(2), they did not claim that they had been actually damaged in any way as a result of the claimed TILA violation. Therefore, because the alleged TILA violation did not somehow negate the validity of the underlying loan transaction, it was not directed at or an answer to the underlying debt.) *In re Audino*, 10 B.R. 135 (Bkrtcy.D.R.I.1981) ("...

*Basham* gains logical appeal when one considers that to allow a debtor to revive a TILA cause of action merely by not paying the debt, waiting to be sued, and then raising the action as a counterclaim would defeat the very purpose of the statute of limitations.").

**9.** See discussion: *Debtors may assert TILA violations in bankruptcy court even though barred from making such assertions in state court.*, *supra*.

violation. Specifically, they argue that although the disclosure statement contains language asserting a ten (10) day limitation with respect to a security interest in consumer goods of the Debtors, the security agreement does not contain such language.

In the center of the front page of the disclosure statement, the following language exists:

■ Reg. Z (Section 226.8(b)(5)) requires that a disclosure statement describe the type of security interest acquired by the creditor in connection with the extension of credit and clearly identify the property to which the security interest relates. In addition, Reg. Z provides that if after-acquired property is subject to the security interest, that fact must be clearly set forth in the disclosure statement. The Debtors' disclosure statement describes the security interest clearly as one in real estate, and it sets forth the address of the Debtors' residence. Furthermore, the disclosure statement provides the ten day limitation for after acquired property:

### DESCRIPTION OR IDENTIFICATION OF SECURITY INTEREST

Consumer Goods owned by Borrower(s) including but not limited to household goods, furniture, appliances and personal property of all kinds and descriptions and all accessions thereto and all additions and replacements if Borrower(s) acquire rights therein within 10 days after receiving value from lender.

Therefore, the disclosure statement complies with Reg. Z.

■ The Debtors assert that the security agreement entered into by the parties does not contain a clause which refers to a ten day limitation for after acquired consumer goods (just personal property). The court disagrees with this assertion. The top portion of the front page of the security agreement contains the following language:

It is hereby agreed by the above named Debtors that the above named Secured party shall have a security interest in the *personal property (also referred to as*

*collateral) described below* together with all rights and remedies of a Secured Party under the Uniform Commercial Code of this State, and to the extent permitted by said Code in all additions and accessions thereto and in all replacements thereof *hereafter acquired by the Debtors within 10 days after Secured Party gives value.*

Below this paragraph, a heading in the center of the document reads:

"THE COLLATERAL COVERED BY THIS SECURITY AGREEMENT IS DESCRIBED AS FOLLOWS:," which is followed by another paragraph stating "ALL of the consumer goods owned by the Debtor(s) including ... and other personal property...." The ten day limitation in the security agreement applies to consumer goods by reference because both consumer goods and personal property are referred to collectively as "collateral."

■ In addition, to the extent that the Debtors argue that the language in the security agreement was confusing or misleading, the information causing the confusion is not material. In *In re Smith,* 737 F.2d 1549 (CA11 GA 1984), the TILA disclosure statement identified the security interest in the debtor's residence, but failed to reveal that the debtor's residence secured future advances. The Deed to Secure Debt indicated that the debtor's residence secured a present and a future indebtedness. The court in *Smith* held that "[a] nondisclosure is material if it is of the type that ' "a reasonable consumer would view as significantly altering the 'total mix' of information made available." ' " *In re Smith,* 737 F.2d at 1554 (citing *Davis v. Federal Deposit Insurance Co.,* 620 F.2d 489, 492 (CA5 LA 1980) (citations omitted), *modified,* 636 F.2d 1115 (1981)). When a consumer is "shopping" for credit, the information must be of a type that would affect the consumer's choice of creditor. *Id.*

The Eleventh Circuit in *Smith* noted the opinion of *Jones v. Fitch,* 665 F.2d 586 (CA5 1982) where the disclosure statement did not contain a description of the real property that secured the debt, but the real property was fully described in a simulta-

neously executed deed. A material nondisclosure is when the information is not so important that a reasonable consumer would probably change creditors on the basis of it, but it might be relevant for a credit decision. *In re Jones*, 665 F.2d at 588. The *Jones* court held that the failure to describe the property in the disclosure statement was not "a material nondisclosure ... in light of the simultaneous execution of the deed of trust and the reference to the deed of trust in the disclosure statement." *Jones*, 665 F.2d at 590. In the case at bar, the security agreement incorporates by reference the promissory note, which includes the disclosure statement. The fact that the ten day limitation language was not in the same paragraph as the "consumer goods" language cannot be elevated to the status of a nondisclosure because the necessary information was on the same page *and* it was unambiguously included on the referenced disclosure statement. Accordingly; there was no material nondisclosure for which damages can be awarded.

F.  *UMS's security interest in the Debtors' personalty is subject to 13 Pa. C.S.A. § 9301.*

■ In Pennsylvania, the attachment and enforceability of a security interest is governed by 13 Pa.C.S.A. § 9203 (Purdons 1984). In order to enforce a security agreement, the following prerequisites must be met:

(a) **Enforceability.**— ... a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition ...;

(2) value has been given; and

(3) the debtor has rights in the collateral.

(b) **Attachment.**—A security interest attaches when it becomes enforceable against the debtor with respect to the

collateral. Attachment occurs as soon as all of the events specified in subsection (a) have taken place unless explicit agreement postpones the time of attaching.

Therefore, when there is an agreement, value, and collateral, the security agreement becomes enforceable between the parties and is said to "attach." 13 Pa.C.S.A. § 9203, Official Comment 1. Perfection of a security interest, however, often depends on the additional step of filing a financing statement (13 Pa.C.S.A. § 9302) or possession of the collateral (13 Pa.C.S.A. §§ 9304(a) and 9305). In the event that a security interest has attached, but has not been properly perfected, 13 Pa.C.S.A. 9301 directs who will take priority.

■ In the case at bar, the parties have evidenced a mortgage on the Debtors' residence which attached and was properly perfected by virtue of its recording Allegheny County. The parties have failed, however, to bring forth evidence of proper filing of UMS's security interest in the Debtors' personalty. Based on the language of 13 Pa. C.S.A. § 9302, a financing statement must be filed to perfect a security interest in personalty because such a security interest is not specifically excluded in the Code. By not filing a financing statement, UMS failed to perfect its security interest in the Debtors' personalty, and its claim must be subordinated consistent with 13 Pa.C.S.A. § 9301.

## ORDER OF COURT

AND NOW, this 22 day of May, 1992, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Debtors' Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED that the Debtors' objection to the secured claim filed by United Mortgage Services, Inc. in the amount of $7,186.78 is denied.